OZARK RUSTIC HOMES, Employer
and TRI-STATE INSURANCE COMPANY,
Insurance Carrier *v.* Jeff ALBRIGHT, Employee

CA 80-92                                    600 S.W. 2d 420
Court of Appeals of Arkansas
Opinion delivered June 4, 1980
Released for publication June 25, 1980

*Blair, Cypert, Waters & Roy*, for appellants.

*Niblock & Odom*, for appellee.

MARIAN F. PENIX, Judge. The Claimant was paid disability benefits by the Respondent Carrier from September 19, 1976 through November 30, 1976. These benefits were paid as a result of an alleged on-the-job injury suffered by the Claimant September 19, 1976. The Claimant petitioned the Administrative Law Judge Charles E. Davis to change physicians at the expense of the Respondent Employer. A hearing was held only on the issue of changing physicians. The parties stipulated the Claimant had suffered an on-the-job injury. In Judge Davis' Order of March 31, 1977 Judge Davis found the Claimant did suffer a compensable injury arising out of and in the course of his employment and further found the sole issue was the right of the Claimant to change physicians. Judge Davis granted the request to change physicians.

On October 12, 1977 another hearing was held before Administrative Law Judge Barry Kincannon to determine whether the Claimant was entitled to additional temporary benefits. The Respondents again stipulated the Claimant's injury arose out of and in the course of his employment. At the October 12 hearing the Claimant disclosed he had received treatment at the VA Hospital. The Respondents' attorney was afforded opportunity to depose doctors at the VA and to get medical records from the VA hospital.

Arlene Hatcher, an employee at the VA, was responsible for interviewing the Claimant when he was admitted to the VA. She testified she was the person under whose supervision the form known as FORM 10-10 was completed. The information contained on these forms was obtained directly from the Claimant and was signed by him. On each of the first three forms the Claimant indicated he did not believe the back problem he was having was related to his employment. It was not until his visit to the VA Hospital February 10, 1978

he indicated he believed the care he was receiving was related to his employment.

A nurse at the VA Hospital, Norma Cary, testified she interviewed the Claimant on his first visit to the hospital and that she completed the information at the top of FORM 10-10M where it was written the Claimant told her "back 'went out' yesterday a.m. when patient got out of bed."

As a result of the new evidence discovered in regard to treatment at the VA Hospital the Respondents withdrew their stipulation and controverted the issue of an on-the-job, compensable injury. On September 29, 1978 a hearing was held before Administrative Law Judge Lee Kuykendall on the matter of the right of Respondents to withdrew their stipulation and upon the matter of whether or not the injury suffered by the Claimant was an on-the-job injury.

On March 7, 1979, Administrative Law Judge Eddie Walker, Jr. filed an Order and opinion refusing to allow Respondents to withdraw their stipulation. The Order recited the injury was compensable and awarded the Claimant additional temporary benefits. The Order left the matter of permanent disability in abeyance. Judge Walker's Order was affirmed by the Full Commission and by the Circuit Court. The Respondents appealed.

The Respondents contend the Circuit Court erred in affirming the Commission's ruling it would not consider evidence on the issue of compensability.

The first question to be resolved is whether the Order arising out of the February 10 "change of physician" hearing was a final order.

The Arkansas Supreme Court recognizes that not every order by an Administrative Law Judge is final and appealable. However, in *Luker* v. *Reynolds Metal Co.*, 244 Ark. 1088, 428 S.W. 2d 45 (1968) the Court stated:

The appealability of the Commission's order in a workmen's compensation claim is not limited to the

final disposition of the matter before the Commission. See *McNeely* v. *Clem Mill & Gin*, 241 Ark. 498, 409 S.W. 2d 502 (1966). ... The ... order determined the employer's responsibility for the injuries and specifically retained jurisdiction for the "purpose of determining the end of claimant's healing period and the extent of his permanent disability, if any." These determinations were sufficiently final for the employer to contest on review (1) its liability to the claimant, (2) whether the evidence established the termination of the healing period, and (3) whether the evidence established any permanent partial disability. To this extent we hold it was final for purposes of review.

Compensability here has been determined by stipulation. While this stipulation may have been procured by fraud, we cannot allow its withdrawal. The Respondents were put on notice of the VA treatment at the February hearing. They made no attempts at that time to investigate the VA treatments. It was within the Respondents' power to discover the fraud.

At the February 10, 1977 hearing the Respondents stipulated the Claimant had suffered a compensable injury. They did, however, contest his changing physicians. Dr. Kaylor, whom Claimant had chosen, had released the Claimant to go back to work. The Claimant testified:

Q. Tell us, what doctors have you seen besides Dr. Kaylor?

A. I went over to Dr. Green's the other day to get a report. I'm going to try to file for a pension, Veterans. If I don't get any better, I'm going to have to get some help someplace.

Q. A non-service connected disability?

A. Well, I'm going to put that in. Got a bad knee in the service, but I'm going to try to put it all in and try to get some help.

Q. But so far as your back is concerned, what doctors have you seen on your back, including chiropractors? Stop and think about it, and just tell the Judge everybody you've seen for your back.

A. Well, let me see. First, I went over . . . I went over to the Veterans.

. . . .

Respondents' Attorney: What was that doctor's name? I'm sorry.

Claimant's Attorney: It was at the VA.

Respondents' Attorney: Do you know what the doctor's name is?

Claimant: Pinnell, I believe.

On cross-examination the Claimant testified:

Q. How did you happen to go see him?

A. 'Cause I'm a veteran and I knowed I didn't have no money to go to any other doctor and I needed some help.

The Respondents contended the Claimant was "doctor shopping" hopeful that he would be able to find someone who would find something wrong with him. At the February hearing the Respondents were put on notice the Claimant had been to the VA Hsopital. They did not move to withdraw their stipulation nor did they ask to depose the VA doctors and secure the VA Hospital records. The hearing resulted in an Order directing the Claimant be examined by Dr. William C. Lockhart, Holt-Krock Clinic, Fort Smith, Arkansas, and further that the cost of such examination be borne by the Respondents.

The Respondents failed to appeal this Order within thirty days pursuant to Ark. Stat. Ann. § 81-1325(b). The threshold question of compensability was decided by the

Respondents' stipulation. The Respondents did not choose to depose the VA doctor nor the VA employees regarding the VA records, even though the Claimant had testified to having received treatment at the VA. The Respondents are precluded now from withdrawing their stipulation. Their appeal was not timely filed.

Reluctantly we must affirm this decision. Had the Respondents not been placed on notice of the VA visits at the February hearing we would be compelled to allow the withdrawal of the stipulation. If the *first* revelation of treatment at the VA Hospital had come at the October hearing, perhaps this could be treated as a motion for a new trial due to the newly discovered evidence. However, this evidence could have been discovered in February in the same manner it was discovered in October. No appeal having been taken we find the Order to be final.

If there were fraud it could have been discovered at the February hearing prior to the rendition of the Order.

Affirmed.