KENNETH S. HIXSON, Judge
Appellants, Arkansas Department of Correction (ADC) and Arkansas Insurance Department, Public Employee Claims Division (PECD), appeal from a May 4, 2018 opinion by the Arkansas Workers' Compensation Commission (Commission) affirming and adopting the findings of fact and conclusions of law made by the administrative law judge (ALJ) in favor of appellees, *542 James Jackson (Jackson) and the Death and Permanent Total Disability Trust Fund (Trust Fund). The Commission found in relevant part that Jackson was entitled to a 20 percent wage loss in addition to the 3 percent anatomical impairment rating for a total of 23 percent because the back injury was the major cause of Jackson's disability, that Jackson was not permanently and totally disabled, that Jackson's correct compensation rate was based on Jackson's contract of hire, and that PECD was not entitled to a credit due to its binding stipulation on the compensation rate at the first hearing.
On appeal, appellants contend that substantial evidence does not support the Commission's findings that (1) Jackson met his burden of proving that he is entitled to the additional 20 percent wage-loss disability and that the compensable back injury was the major cause of Jackson's disability; (2) Jackson's average weekly wage is $ 18.95 an hour for eighty hours every two weeks based on a contract of hire; or (3) appellants are not entitled to a credit for the overpayment of benefits at the erroneous wage rate. We affirm.
I. Relevant Facts
It is undisputed that Jackson sustained a compensable back injury on December 9, 2013. Jackson worked for twenty-three years as a prison guard for ADC before his accident and had been supervising twenty-six employees. On December 9, 2013, Jackson felt a pop in his back after lifting a dummy during his physical-endurance test.
Jackson was treated by his general practitioner, Dr. Simon, and was eventually referred to Dr. P.B. Simpson, a neurosurgeon. Although MRI testing showed "a herniated nucleus pulposus (HNP) at L4-5 with an acute annular tear and an L5-S1 HNP with nerve root compression," Dr. Simpson disagreed with the radiologist's opinion and diagnosed Jackson with a lumbar strain, degenerative-disc disease, and spondylosis. Dr. Simpson recommended an epidural steroid injection, physical therapy, and follow up with Dr. Simon. When Jackson's symptoms persisted, Dr. Simpson ordered a myelogram and CT scan, which were unremarkable. A functional capacity evaluation (FCE) was performed on April 8, 2014, and the results demonstrated that Jackson had the ability to work in the medium classification. Therefore, Dr. Simpson released Jackson on April 14, 2014, and assessed a 3 percent impairment rating for degenerative-disc disease.
Thereafter, in 2015, Jackson sought unauthorized treatment from Dr. Brad Thomas, another neurosurgeon, and Dr. Scott Bowen, an orthopedic surgeon. Jackson's treatment and subsequent surgery with these doctors were the subject of the first hearing with an ALJ in November 2015. At the 2015 hearing, ADC and PECD stipulated that Jackson had sustained a compensable injury at a compensation rate of $ 602/$ 452 and was entitled to medical expenses, temporary total-disability benefits until April 14, 2014, and a 3 percent impairment rating to the body as a whole as assessed by Dr. Simpson. Appellants disputed, however, that Jackson was entitled to additional benefits for any unauthorized treatments and surgery from Dr. Thomas and Dr. Bowen. In a February 4, 2016 opinion, the ALJ made the following pertinent findings:
2. The claimant's first healing period ended April 14, 2014, when Dr. Simpson released him from his care. The claimant reentered a second healing period on May 21, 2015, when Dr. Thomas performed surgery.
*543 3. The surgery performed by Dr. Thomas was unreasonable and unnecessary in relation to the injury sustained. Therefore, the respondents [ADC and PECD] are not liable for temporary total disability benefits.
4. Dr. Simpson is an authorized treating physician and it was permissible for the claimant to return for follow-up even after his release. Respondents remain liable for Dr. Simpson's expense.
5. The claimant saw Dr. Thomas for a second opinion and should have obtained the permission of the carrier or the Commission to change physicians to Dr. Thomas. Dr. Thomas and Dr. Bowen are unauthorized physicians and respondents are not liable for expenses associated with their treatment.
The ALJ also noted that Jackson remained symptomatic even after his surgery and that repeat diagnostic testing showed a recurrent disc herniation. Jackson appealed that decision to the Commission, and the Commission affirmed and adopted the ALJ's decision on September 7, 2016. The decision was not appealed to the court of appeals.
After the Commission's 2016 decision, Jackson followed up with his general practitioner, Dr. Simon, and exercised his one-time change of physician. On April 5, 2017, Dr. Simon signed a statement explaining that Jackson was not able to work as a result of the December 9, 2013 injury and was therefore "100% disabled." The record additionally contains a follow-up letter from Dr. Simon. In that letter, Dr. Simon indicated "yes" that the "assessment of the permanent impairment or disability that Mr. Jackson now has includes the result of the back surgery that Mr. Jackson had on May 21, 2015[.]"
A second hearing with an ALJ was held on August 11, 2017. According to the June 29, 2017 prehearing order, the issues for litigation included the correct compensation rate, the loss of earning capacity, the Trust Fund's liability, and attorney's fees. Jackson claimed that he was permanently and totally disabled or suffered wage loss in excess of the impairment rating due to his age, education, and work experience. PECD disagreed and contended that Jackson had already been paid all the benefits he was entitled to receive. PECD and the Trust Fund additionally contended that benefits had been paid at an incorrect stipulated compensation rate of $ 468/$ 351 based on a mathematical wage calculation that included a one-time bonus. PECD claimed that this resulted in an overpayment of temporary total-disability (TTD) and permanent partial-disability (PPD) benefits. PECD sought a credit for any over payment based on the previously stipulated compensation rate, and the Trust Fund contended that because it was not a party to the stipulated compensation rate at the previous hearing, it should not be bound to the inaccurate compensation rate.
At the hearing, Jackson testified regarding the case history and the severity of his disability. He testified that he had not been able to work since December 12, 2013, and that he had been working as a lieutenant with ADC. ADC terminated his employment in March 2014 after Jackson's Family Medical Leave Act (FMLA) time had been exhausted. Despite applying for employment at various locations, Jackson had been unable to find employment. Therefore, Jackson claimed that he had been unable to work as a result of his 2013 injury, that he continued to have pain and physical limitations, and that he used a cane to walk. Jackson further claimed that at one point before his surgery in 2015, he had to use a wheelchair and was unable to *544 walk. While his walking had improved since that time, he still continued to have shooting pain every day and took medication. Jackson additionally explained that his symptoms existed before and after the surgery. Initially, the 2015 surgery made him feel better; however, his symptoms eventually returned approximately a week later.
Heather Taylor testified that she is a vocational-rehabilitation counselor and that she had completed a vocational assessment for Jackson. After looking at Jackson's medical records and FCE, Taylor had found approximately ten or twelve potential jobs. However, Taylor claimed that Jackson told her that he did not think he was capable of working. Although Taylor testified that Jackson also told her that he was not going to apply for any jobs, Jackson denied making that statement. On cross-examination, Taylor admitted that in looking for potential job opportunities, she does not necessarily consider whether a person has chronic pain or limitations due to medications in her assessment. She further testified that Jackson did not tell her that he was unable to drive due to a medication he was taking. Additionally, Taylor acknowledged the fact that Jackson uses a cane to walk and that the use of a cane could have a negative impact on his prospects of finding employment.
Regarding Jackson's compensation rate, Jackson testified that he had been paid a salary and that he had been hired to work full time in alternating shifts that consisted of twenty-four hours one week and fifty-six hours the following week, totaling eighty hours every two weeks. His pay stubs reflected an hourly wage rate of $ 18.95. In addition, there was much discussion at the hearing between the ALJ and the parties regarding the wage records that had been submitted. PECD and the Trust Fund had proposed a new calculation to determine Jackson's average weekly wage using the last fifty-two weeks of his employment history. However, the Trust Fund admitted at one point that at least six of the last fifty-two weeks had to be dropped because they were not full time weeks as required by statute. Ultimately, Jackson clarified that his hours varied by the week, but regardless, he was supposed to be paid $ 18.95 an hour for eighty hours every two-week pay period. Jackson additionally testified that his salary was different over the course of employment due to his rank.
After a hearing, the ALJ filed an opinion on November 3, 2017, and made the following relevant findings:
COMPENSATION RATE
The claimant was employed at the Department of Corrections for twenty-three (23) years and at the first hearing in 2015, the claimant and respondent # 1 [PECD], the Department of Corrections, stipulated to a compensation rate of $ 602.00/$ 452.00. Benefits were paid at that rate before respondent # 2, The Fund [the Trust Fund], challenged the accuracy of the compensation rate at the second hearing. The Fund was not a party to the stipulation of the compensation rate at the first hearing.
Apparently, a one-time bonus was incorrectly included in the calculation of the compensation rate. Therefore, respondent # 1 seeks a credit for an overpayment.
Respondent # 1 is bound by their stipulation.... Therefore, I find respondent # 1 is not entitled to a credit for an overpayment.
The calculations for the compensation rate changed during the hearing.... Given that the claimant has a long work history with the respondent-employer and his salary is set by his rank, I think it is unfair to the claimant to use the *545 recorded earnings. I find the claimant's average weekly wage should be based on his contract of hire of $ 18.95 per hour for eighty (80) hours every two (2) weeks, based on his testimony.
MEDICAL EVIDENCE
Records generated since the last hearing show Dr. Simon, the claimant's general practitioner, opine the claimant was one hundred percent (100%) disabled in his report of December 8, 2016, due to chronic low back pain. The claimant is essentially disregarding the opinions of the specialists and relying on his general practitioner's opinion.
DOCUMENTARY EXHIBITS
Wage records and Ms. Taylor's July 5, 2017, vocational assessment are included. The claimant receives Social Security Disability ($ 1,515.00/month) and state retirement benefits ($ 1,475.00/month). Ms. Taylor commented that the claimant "had no particular job interest and was unsure of any particular re-training interest."
FINDINGS OF FACT AND CONCLUSIONS OF LAW
The claimant is a fifty-one (51) year old high school graduate with a twenty-three (23) year history as a correctional officer. He has not worked since December 12, 2013, and was terminated March 27, 2014. He unsuccessfully attempted light-duty with the respondent-employer and has looked for work elsewhere to no avail. The claimant uses a cane to ambulate and takes medication for chronic pain that makes him drowsy. His valid FCE places him in the medium work category, but the claimant doesn't feel able to work full-time. He has a three percent (3%) impairment rating.
Wage-loss is the degree to which the compensable injury has affected the claimant's earning capacity. The extent of disability is a question of fact for the Commission. The Commission is charged with assessing wage-loss on a case by case basis. Factors to be considered in assessing wage-loss include the claimant's age, education, work experience, medical evidence and other matters which may reasonably be expected to affect the workers' future earning power such as motivation, post-injury income, bona fide job offers, credibility, or voluntary termination. The award of wage-loss is not a mathematical formula but a judicial determination based on the Commission's knowledge of industrial demands, limitations, and requirements.
After reviewing the evidence, I find the claimant's age and chronic pain are factors that entitle him to wage-loss. He is unable to return to the job he has performed most of his adult life.
1. The Workers' Compensation Commission has jurisdiction of this claim in which the employee-employer-carrier relationship existed on December 9, 2013, at which time the claimant sustained a compensable injury at a compensation rate of $ 602.00/$ 452.00. Medical expenses, temporary total disability benefits (until April 4, 2014), and a three percent (3%) impairment rating as assessed by Dr. Simpson have been accepted. The claimant has a child support obligation in Drew County. This claim has been the subject of a previous hearing with Opinions entered on February 4, 2016, and September 7, 2016. The Medical Cost Containment Division approved a change of physician from Dr. K. Holder to Dr. W. Rutledge on November 21, 2016. The claimant receives Social Security Disability benefits.
2. The claimant has proven, by a preponderance of the evidence of *546 record, that he is entitled to wage-loss in the amount of twenty percent (20%) in addition to the three percent (3%) anatomical rating for a total of twenty-three percent (23%). The compensable back injury is the major cause of disability.
3. Based on the FCE results and his transferrable skills as a supervisor, the claimant is not permanently and totally disabled.
4. The correct compensation rate is based on the claimant's contract of hire.
5. Respondent # 1 is not entitled to a credit due to their binding stipulation on the compensation rate at the first hearing.
6. As The Fund was not a party to the initial stipulation on the compensation rate, they are not bound by the stipulation agreed to by the claimant and respondent # 1.
7. If they have not already done so, the respondents are directed to pay the court reporter, Shawna Shepherd, fees and expenses within thirty (30) days of receipt of the bill.
8. This claim has been controverted and the claimant's counsel is entitled to the maximum attorney's fees to be paid in accordance with Ark. Code Ann. § 11-9-715, § 11-9-801, and WCC Rule 10.
Pursuant to the Full Commission decisions of Coleman v. Holiday Inn, (November 21, 1990) (D708577), and Chamness v. Superior Industries, (March 5, 1992) (E019760), the claimant's portion of the controverted attorney's fee is to be withheld from, and paid out of, indemnity benefits, and remitted by the respondent, directly to the claimant's attorney.
(Some internal citations omitted.)
Appellants appealed the ALJ's decision, and on May 4, 2018, the Commission affirmed and adopted the ALJ's opinion as its own. Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. SSI, Inc. v. Cates , 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. Id. Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. Id. This appeal followed.
II. Standard of Review
In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. Prock v. Bull Shoals Boat Landing , 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. Id. The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission. Id. Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. Id. Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. Wilson v. Smurfit Stone Container , 2009 Ark. App. 800, 373 S.W.3d 347. When there are contradictions in the evidence, it *547 is within the Commission's province to reconcile conflicting evidence and determine the facts. Id. Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. Prock, supra.
III. Wage-Loss Disability Benefits
Appellants first contend that substantial evidence does not support the Commission's findings that Jackson met his burden of proving that he is entitled to the additional 20 percent wage-loss disability and that the compensable back injury was the major cause of Jackson's disability. The crux of appellants' argument is that Jackson's unauthorized surgery amounted to a nonwork-related independent intervening cause and that because the unauthorized surgery was the major cause for any additional wage-loss disability, Jackson is not entitled to those benefits under Arkansas Code Annotated section 11-9-102(4)(F)(iii) (Repl. 2012). Appellants further argue that the Commission must have considered the surgery in awarding wage loss to Jackson because Jackson's pain and limitations were as a result of the unsuccessful surgery. Appellants additionally argue that any additional wage-loss disability is not appropriate even considering his condition before surgery. We disagree.
Permanent benefits may be awarded only upon a determination that the compensable injury was the major cause of the disability or impairment. Ark. Code Ann. § 11-9-102(4)(F)(ii)(a). However, benefits shall not be payable for a condition that results from a non-work-related independent intervening cause following a compensable injury that causes or prolongs disability or a need for treatment. Ark. Code Ann. § 11-9-102(4)(F)(iii). The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. Ark. Highway & Transp. Dep't v. Wiggins , 2016 Ark. App. 364, 499 S.W.3d 229. When a claimant has an impairment rating to the body as a whole, the Commission has the authority to increase the disability rating based on wage-loss factors. Id. The Commission is charged with the duty of determining disability based on consideration of medical evidence and other factors affecting wage loss, such as the claimant's age, education, work experience, motivation, postinjury income, demeanor, and credibility. Id. ; Ark. Code Ann. § 11-9-522.
Here, the Commission considered appellee's age and chronic pain as factors that would entitled him to wage loss. It is also clear from the opinion that the Commission considered appellee's limited education, his lack of transferable skills based on his work history over the past twenty-three years, and his motivation, as well as other factors. After reviewing the evidence, the Commission subsequently concluded that appellee was entitled to 20 percent wage-loss disability. As part of their argument, appellants argue that the Commission considered a non-work-related injury-his surgery-in its calculations. However, there is no evidence that the Commission considered anything other than what it was asked to consider. See Ark. Highway & Transp. Dep't v. Work , 2018 Ark. App. 600, 565 S.W.3d 138. The Commission's findings are based on the appropriate wage-loss factors, and its opinion adequately discusses the rationale that underlies that finding. Moreover, the Commission found that the compensable back injury is the major cause of disability. The Commission's finding is supported by Jackson's testimony that his symptoms persisted both before and after the surgery. Additionally, Jackson has been unable *548 to work since December 2013, which was well before his surgery in 2015, and even Dr. Simon stated in his letter that Jackson was not able to work as a result of the December 9, 2013 injury.
It is the Commission's duty to make credibility determinations and to weigh the evidence. See Work, supra. Considering the fact-intensive nature of this inquiry, in which all the specific facts of this claimant's age, abilities, education, physical and mental limitations, motivation, demeanor, and any other factor deemed relevant are to be considered, we hold that reasonable minds could conclude that Jackson was entitled to 20 percent wage-loss disability in excess of his permanent partial impairment.
IV. Average Weekly Wage
Next, appellants contend that substantial evidence does not support the Commission's finding that Jackson's average weekly wage is $ 18.95 an hour for eighty hours every two weeks based on a contract of hire. Appellants argue that the compensation rates they stipulated to at the initial hearing in 2015 were in error because the rates were calculated from a wage statement of only one pay period that happened to include a one-time bonus, making the wage calculation far greater than the wages Jackson actually earned in the fifty-two weeks prior to his injury. While the Commission agreed to modify the average weekly wage, appellants argue that the method used by the Commission was unfair and that the Commission should have calculated the average weekly wage by looking at Jackson's actual hours and earnings over the previous fifty-two weeks minus any periods with less than a full-time work week. We disagree.
Arkansas Code Annotated section 11-9-518 provides the following in relevant part:
(a)(1) Compensation shall be computed on the average weekly wage earned by the employee under the contract of hire in force at the time of the accident and in no case shall be computed on less than a full-time workweek in the employment.
(2) Where the injured employee was working on a piece basis, the average weekly wage shall be determined by dividing the earnings of the employee by the number of hours required to earn the wages during the period not to exceed fifty-two (52) weeks preceding the week in which the accident occurred and by multiplying this hourly wage by the number of hours in a full-time workweek in the employment.
....
(c) If, because of exceptional circumstances, the average weekly wage cannot be fairly and justly determined by the above formulas, the commission may determine the average weekly wage by a method that is just and fair to all parties concerned.
Here, there was much discussion at the hearing regarding the accuracy of Jackson's wage records and which records should not be included in calculating Jackson's average weekly wage. Jackson testified that he was hired to work eighty hours every two weeks and that his contract rate of hire was $ 18.95 an hour, which was the rate also listed on his pay stub. The Commission, through the ALJ's opinion, found that
[t]he calculations for the compensation rate changed during the hearing.... Given that the claimant has a long work history with the respondent-employer and his salary is set by his rank, I think it is unfair to the claimant to use the recorded earnings. I find the claimant's average weekly wage should be based on his contract of hire of $ 18.95 per hour *549 for eighty (80) hours every two (2) weeks, based on his testimony.
Substantial evidence supports the Commission's decision on this point, and the formula used by the Commission is not contrary to the applicable statute. See Pafford Med. Billing Servs., Inc. v. Smith , 2011 Ark. App. 180, 381 S.W.3d 921 ; Johnson v. Abilities Unlimited, Inc. , 2009 Ark. App. 866, 372 S.W.3d 838. As such, we affirm on this point.
V. Credit for Overpayment of Benefits
Finally, appellants contend that substantial evidence does not support the Commission's finding that appellants are not entitled to a credit for any overpayment of benefits at the erroneous compensation rate. However, appellants stipulated to the calculated compensation rate at the 2015 hearing, and the Commission found that PECD is "not entitled to a credit due to their binding stipulation on the compensation rate at the first hearing." A stipulation is an agreement between attorneys respecting the conduct of the legal proceedings. Dinwiddie v. Syler , 230 Ark. 405, 323 S.W.2d 548 (1959). However, appellants correctly state that the Commission has the discretion to allow a party to withdraw a stipulation. See Jackson v. Circle T Express , 49 Ark. App. 94, 896 S.W.2d 602 (1995) ; Ark. Code Ann. § 11-9-713.
In Jackson , the employer accepted compensability and paid benefits, and it stipulated to compensability for purposes of a hearing to determine wage-loss benefits and related medical expenses. Jackson , supra. The stipulation also was memorialized in a prehearing order. Nevertheless, the Commission allowed the employer to withdraw the stipulation as to compensability in defense of a claim for additional benefits. Id. The Commission reasoned that enforcing the stipulation was not compatible with the basic notions of justice and fair play, and we affirmed. Id.
The same cannot be said here. At the time of the stipulation, appellants should have been aware of Jackson's employment and wage history, and we cannot find that the Commission abused its discretion in failing to allow appellants to retroactively withdraw their stipulation and benefit from a mistake discovered years after the fact. See Ozark Rustic Homes v. Albright , 269 Ark. 696, 600 S.W.2d 420 (1980). Thus, we affirm on this point.
Affirmed.
Abramson and Virden, JJ., agree.