Cite as 2020 Ark. App. 359

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-20-32

| | |
|---|---|
| CENTRAL MOLONEY, INC., AND RISK MANAGEMENT RESOURCES<br>APPELLANTS<br><br>V.<br><br>CLARENCE HOLMES<br>APPELLEE | **Opinion Delivered:** August 26, 2020<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G705487]<br><br>AFFIRMED |

## MIKE MURPHY, Judge

Appellants Central Moloney, Inc., and Risk Management Resources (collectively Central Moloney) appeal the Arkansas Workers' Compensation Commission's (Commission's) decision affirming and adopting the opinion of the administrative law judge (ALJ) finding that appellee Clarence Holmes was entitled to pain management as a reasonably necessary medical treatment and that he was entitled to 40 percent wage-loss disability as a result of his compensable injury. Appellants assert three points on appeal: (1) that the Commission erred in failing to address all the evidence, specifically the MRI conducted by Dr. Seale and the EMG conducted by Dr. Sprinkle; (2) that substantial evidence does not support the Commission's finding that Dr. Kazemi's recommendation of a referral for pain management was reasonably necessary; and (3) that substantial evidence does not support the Commission's finding that the compensable back injury resulted in a 40 percent wage-loss disability. We affirm.

Holmes, sixty-three years old, was employed by Central Moloney as a coil inspector since 1984. On July 27, 2017, Holmes sustained a compensable injury to his lower back while twisting a nine-hundred-pound coil. He testified that he "got this pain in [his] back. And it went down [his] back and [his] leg." Holmes testified that he reported the injury to his supervisor and attempted to treat the pain with BioFreeze. He testified that a few days later, he reported to the emergency room because he was in so much pain. There, he was diagnosed with "lumbar back pain with radiculopathy affecting left lower extremity." Holmes testified that after he had attempted to return to work, he was still in pain. He sought treatment from MedExpress where he was released to modified duty. However, Holmes stopped working because modified-work duty was not available.

In August 2017, an MRI revealed degenerative disc and degenerative-joint disease with an L5-S1 disc protrusion. Holmes was then evaluated by Dr. Seale. Dr. Seale reported,

> The patient's MRI reveals a disc extrusion on the left L5-S1. This objective finding matches his subjective complaints of pain. This is an acute injury. The patient's mechanism of pushing and twisting matches the objective findings as well. The patient's symptoms began on and after the work injury. The patient has no history of pain in the low back or down the leg prior to the work injury. Therefore it is within a certain degree of medical certainty that at least 51% of the patient's current symptoms are directly related to their work injury.

Despite physical therapy, injections, and surgery, Holmes remained symptomatic. He returned to work with restrictions of no bending, twisting, or lifting over twenty pounds.

On December 4, Dr. Seale released Holmes to regular work with no restrictions and instructed him to report back if he was unable to tolerate the work. Holmes reported that standing all day at work caused pain in his back, calf, and foot, and it made his ankle swell. On January 31, 2018, Dr. Seale assigned Holmes a 10 percent impairment rating and found

that he had reached maximum medical improvement. The parties stipulated that Central Moloney would pay permanent partial-disability benefits pursuant to the impairment rating.

After Holmes attempted to return to work again without restrictions, Dr. Seale ordered that Holmes participate in a functional-capacity evaluation. The evaluation indicated that "a reliable effort was put forth" and that he demonstrated the ability to perform work in the medium classification of work. Holmes testified that he did not return to work after the evaluation because Central Moloney terminated him in late March. Central Moloney's environmental safety manager testified that the company could not provide him work that did not require him to constantly stand, which Holmes could not do because of his leg and foot pain.

The parties stipulated that Holmes received a change of physician from Dr. Seale to Dr. Kazemi on May 3. Upon examining Holmes, Dr. Kazemi requested an MRI and noted that "if there is no further surgical treatment possible [he] will suggest referral to pain management for his ongoing symptoms." The MRI revealed "[m]ild degenerative change involving the disc at L5–S1 with a small, herniated disc fragment posteriorly and slightly paracentrally to the left with some inflammatory enlargement of the nerve root exiting at this level." Dr. Kazemi also identified epidural scarring that was likely causing Holmes's pain and referred him to pain management.

On December 12, Holmes reported back to Dr. Seale, and Dr. Seale found, "He continues to have back pain. He has pain in the calf and around to the foot in an S1 distribution with hypersensitivity and numbness in the foot. The left buttock pain has

resolved with surgery." Dr. Seale ordered an additional MRI and an EMG. Dr. Sprinkle

performed the EMG and reported the following results:

> The exam is challenging due to recent lumbar sx and pt tolerance of emg, there is electrodiagnostic evidence to suggest a possible resolving left L5 lumbar radiculopathy vs a focal left common peroneal entrapment at the knee, the overall clinical picture would favor focal peroneal especially in the setting of such a severe dorsiflexion and ehl apparent weakness.

> H-reflex and emg findings do not support a S1 radiculopathy.

> No electrodiagnostic evidence focal tibial entrapment is seen in the extremity tested today.

> Electrodiagnostic evidence consistent with a generalized sensory and motor peripheral neuropathy is seen in the extremities tested today.

Dr. Seale reported the following MRI results:

> There is a mild neural disruption along the posterior lateral aspect of the left thecal sac which is consistent with the durotomy that occurred during surgery.

> EMG of the left lower extremity is consistent with peripheral neuropathy and probable peroneal nerve entrapment. No evidence of S1 nerve problem or chronic nerve injury.

> . . . .

> Concerning the peripheral neuropathy, he has diabetes and I told him discuss this with his primary care physician.

> I believe his main current ongoing issue is left peroneal nerve entrapment at the left fibular head. I believe that a peroneal nerve release may help him. However, this is not work-related. I discussed referral for this procedure and he declined at this time.

> . . . .

> Concerning the patient's inability to sit or stand for long periods of time, he states his main problem is pain in the calf and top of the left foot as well as swelling. Given the recent EMG results, this is most likely related to the peroneal nerve entrapment but I cannot be 100% sure of this.

4

On January 18, 2019, the ALJ determined that Holmes proved entitlement to additional medical treatment and wage-loss disability. The decision was appealed to the Commission, which affirmed the ALJ and made the following relevant findings:

> The Full Commission finds that the treatment of record after July 27, 2017 was reasonably necessary in connection with the compensable injury. The claimant credibly testified that he felt pain in his back and left leg following the compensable injury, even after surgery performed by Dr. Seale. The evidence demonstrates that the claimant's complaints of pain in his back and left lower extremity were causally related to the compensable injury. The claimant underwent physical therapy, a steroid injection, and finally surgery performed by Dr. Seale. Dr. Seale opined on January 31, 2018 that the claimant had reached maximum medical improvement. Dr. Kazemi's recommendations on July 11, 2018 included a referral for pain management. It is well-settled that a claimant may be entitled to ongoing medical treatment after the healing period has ended, if the medical treatment is geared toward management of the claimant's injury. *Patchell v. Wal-Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004). We find in the present matter that Dr. Kazemi's recommendation of a referral for pain management is reasonably necessary.
>
> . . . .
>
> The preponderance of evidence does not demonstrate that medium-level or restricted work duty was available with the respondent-employer. The record plainly shows that the respondents terminated the claimant's employment effective March 23, 2018. The respondents informed the claimant, "Your termination is a result of the fact that we cannot reasonably accommodate your disability." The claimant had been employed with the respondents since 1984, and the claimant credibly testified that he was "devastated" by his firing. Heather Taylor, the vocational consultant, testified that the claimant cooperated with her efforts to locate gainful employment within the claimant's permanent physical restrictions. The claimant testified that he had applied for several openings identified by Ms. Taylor, but the claimant remained unemployed as of the hearing before the administrative law judge on January 18, 2018.
>
> The claimant in the present matter is age 63 with no formal education beyond high school. The claimant has a solid work history of unskilled manual labor and had been gainfully employed with the respondents since 1984. As a result of the July 27, 2017 compensable injury, the claimant is no longer able to fully perform his work as a coil inspector for the respondents. The evidence demonstrates that the claimant is motivated to return to appropriate work, and Heather Taylor even testified that the claimant would prefer to remain employed with the respondents. Dr. Seale has assigned a 10% permanent anatomical impairment rating. The respondents

5

terminated the claimant's employment following the valid Functional Capacity Evaluation on March 12, 2018 which showed that the claimant can now perform only medium-level work. The Full Commission therefore affirms the administrative law judge's award of wage-loss disability in the amount of 40%.

Central Moloney now timely appeals.

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. *Id*. Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id*. Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *Wilson v. Smurfit Stone Container*, 2009 Ark. App. 800, 373 S.W.3d 347. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id*. Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Prock*, *supra*.

Arkansas Code Annotated section 11-9-508(a) (Repl. 2012) requires an employer to provide an employee with medical and surgical treatment "as may be reasonably necessary

in connection with the injury received by the employee." A claimant may be entitled to additional medical treatment after the healing period has ended if said treatment is geared toward management of the injury. *Patchell v. Wal-Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004). Medical treatment intended to reduce or enable an injured worker to cope with chronic pain attributable to a compensable injury may constitute reasonably necessary medical treatment. *Nabholz Constr. Corp. v. White*, 2015 Ark. App. 102. A claimant is not required to furnish objective medical evidence of his or her continued need for medical treatment. *Ark. Health Ctr. v. Burnett*, 2018 Ark. App. 427, 558 S.W.3d 408. However, a claimant bears the burden of proving entitlement to additional medical treatment. *LVL, Inc. v. Ragsdale*, 2011 Ark. App. 144, 381 S.W.3d 869. What constitutes reasonably necessary treatment is a question of fact for the Commission. *Id*. The Commission has authority to accept or reject medical opinion and to determine its medical soundness and probative force. *Id*. Furthermore, it is the Commission's duty to use its experience and expertise in translating the testimony of medical experts into findings of fact and to draw inferences when testimony is open to more than a single interpretation. *Id*.

Because they are interrelated, we will address Central Moloney's first two arguments together. Central Moloney asserts in these two arguments that the Commission erred in failing to address the opinions of Dr. Sprinkle and Dr. Seale concerning the December 2018 EMG and the January 2019 MRI, which found that Holmes's inability to stand and continued pain did not stem from the compensable work-related injury. They claim that had the Commission not arbitrarily disregarded these findings, the Commission would have determined that pain management was not reasonably necessary. Central Moloney further

asserts that the Commission erroneously relied on Dr. Kazemi's recommendation of pain management because Dr. Kazemi did not have the benefit of the EMG and MRI findings. We disagree.

In determining that Holmes was entitled to pain management, the Commission found that Holmes credibly testified that he had complained of back and leg pain since the work injury in July 2017 and that the medical evidence corroborated his testimony. Dr. Seale's office notes consistently mention leg pain throughout the case. At the start of the case, Dr. Seale reported that he believed that within a certain degree of medical certainty, at least 51 percent of Holmes's current symptoms were directly related to the work injury. It was not until a year and a half later that Dr. Seale opined that, though he was not 100 percent sure, Holmes's continued pain was not likely due to his work-related injury.

Even still, Dr. Kazemi's medical opinion supports the Commission's finding. Upon review of the MRI, Dr. Kazemi recommended that Holmes be referred to pain management due to complications stemming from the work-related injury. According to a note from Dr. Kazemi's office, he observed epidural scarring that was likely causing the continued pain. The discrepancy between Dr. Kazemi's opinion and Dr. Seale's and Dr. Sprinkle's MRI and EMG opinions goes to the weight of the evidence. Ultimately, the Commission was confronted with multiple medical opinions and credited Dr. Kazemi's recommendation. It is within the Commission's province to reconcile conflicting evidence, including the medical evidence. *Burnett*, 2018 Ark. App. 427, at 10, 558 S.W.3d at 414.

Further, the Commission did not arbitrarily reject Dr. Seale's and Dr. Sprinkle's opinions concerning the MRI and the EMG. In workers'-compensation cases, arbitrary

disregard of evidence is demonstrated when the Commission affirmatively states that there is "no evidence" for a proposition when such evidence has, in fact, been presented in the proceeding. *Lonoke Exceptional Sch., Inc. v. Coffman*, 2019 Ark. App. 80, at 3, 569 S.W.3d 378, 381. Here, the Commission noted the findings in its discussion; it simply chose not to credit them in reaching its conclusion. This decision not to credit the EMG and the MRI does not contradict the evidence as Central Moloney suggests because the evidence discussed above supports the conclusion. Again, the Commission was aware of the inconsistencies in the evidence but gave more weight to Dr. Kazemi's opinion. We will not reweigh this determination.

Central Moloney also contends that the Commission's finding of 40 percent wage-loss disability is not supported by substantial evidence because Holmes's disability is due to a non-work-related injury rather than his compensable back injury. To support this argument, Central Moloney relies on Dr. Sprinkle's EMG and Dr. Seale's MRI finding that Holmes's continued pain may stem from a non-work-related reason. Central Moloney asserts that it had medium-duty work for Holmes but that it could not accommodate his inability to stand for long periods. It claims that Holmes's inability to stand for long periods was due to leg and foot pain that does not stem from the work-related injury. Thus, Central Moloney argues any restrictions based on his leg and foot pain cannot be used to support wage-loss disability.

Permanent benefits may be awarded only upon a determination that the compensable injury was the major cause of the disability or impairment. Ark. Code Ann. § 11-9-102(4)(F)(ii)(a). However, benefits shall not be payable for a condition that results from a

9

non-work-related independent intervening cause following a compensable injury that causes or prolongs disability or a need for treatment. Ark. Code Ann. § 11-9-102(4)(F)(iii). The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Ark. Dep't of Corr. v. Jackson*, 2019 Ark. App. 124, at 12, 571 S.W.3d 539, 547. When a claimant has an impairment rating to the body as a whole, the Commission has the authority to increase the disability rating based on wage-loss factors. *Id*. The Commission is charged with the duty of determining disability based on consideration of medical evidence and other factors affecting wage loss, such as the claimant's age, education, work experience, motivation, postinjury income, demeanor, and credibility. Ark. Code Ann. § 11-9-522; *id*.

Here, the Commission credited Dr. Kazemi's opinion and considered Holmes's age and chronic pain as factors that would entitle him to wage-loss disability benefits. It is also clear from the opinion that the Commission considered his limited education, his lack of transferable skills on the basis of his work history over the past thirty-five years, and his motivation to find employment. The Commission also considered the testimony of Holmes's vocational consultant that he cooperated with her efforts to find gainful employment within his restrictions. Central Moloney's argument again asks us to reweigh the evidence, which we will not do. The Commission's findings are based on the appropriate wage-loss factors, and its opinion adequately discusses the rationale that underlies that finding. Again, it is the Commission's duty rather than ours to make credibility determinations, to weigh the evidence, and to resolve conflicts in medical opinions, evidence, and testimony. *Ark. Dep't of Transp. v. Abercrombie*, 2019 Ark. App. 372, at 14,

10

584 S.W.3d 701, 710. Therefore, we hold that reasonable minds could conclude the Holmes was entitled to 40 percent wage-loss disability.

Affirmed.

WHITEAKER and HIXSON, JJ., agree.

*Barber Law Firm PLLC*, by: *Karen H. McKinney*, for appellants.

*Hart Law Firm, L.L.P.*, by: *Neal L. Hart*, for appellee.