Cite as 2021 Ark. App. 68

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-20-441

| | |
|---|---|
| FRED NOLEN | **Opinion Delivered:** February 10, 2021 |
| APPELLANT | |
| | APPEAL FROM THE ARKANSAS |
| V. | WORKERS' COMPENSATION |
| | COMMISSION [NO. G804149] |
| WALMART ASSOCIATES; | |
| WALMART ASSOCIATES, INC.; AND | AFFIRMED |
| DEATH & PERMANENT TOTAL | |
| DISABILITY TRUST FUND | |
| APPELLEES | |

## MIKE MURPHY, Judge

Appellant Fred Nolen appeals the Arkansas Workers' Compensation Commission's (Commission's) decision affirming and adopting the opinion of the administrative law judge (ALJ) finding that Nolen's injuries were not compensable. On appeal, Nolen argues that substantial evidence does not support the Commission's findings. We affirm.

Nolen, who was sixty-two years old on the date of his alleged injuries, is employed with Walmart as a night stocker. At the time of his alleged compensable injuries, his normal shift was from 10:00 p.m. to 7:00 a.m. or 8:00 a.m. In the early morning hours of June 15, 2018, Nolen was tasked with moving pallets of water. He described his workload that morning as "unusually heavy." During his shift the next day, Nolen was charged with moving and stacking fifty- to fifty-five-pound bags of dog food. After he got home from work on June 16, Nolen experienced a "gurgling" in his stomach, went to the restroom,

and noticed blood in his stool. Nolen experienced three instances of blood in his stool while he was at home, and he believed this was due to an internal injury from moving the products at work sometime between June 14 and 16.

Nolen was scheduled to work his normal night shift on June 16 to 17, but because he experienced the instances of blood in his stool, he went into work around 8:30 p.m. to complete paperwork alleging that the blood in his stools was the result of a work-related injury. While he was completing the workers'-compensation paperwork at Walmart, he felt the urge to use the restroom, so he did. While doing so, he passed more blood and fainted. He fell and hit his right leg above his kneecap and cut his head above his right eyebrow.

A Walmart employee transported Nolen to the Ouachita County Medical Center where he received stitches for his forehead cut and was admitted to the intensive care unit due to iron-deficient anemia related to his blood loss. The hospital released him on June 18 directing him to stay off work for two days. Upon his return to work, he was restricted to lifting no more than twenty-five pounds until he followed up with a gastroenterologist. When Nolen returned home, he experienced more blood in his stool. Thereafter, Nolen reported to his primary-care physician, Dr. Mosley. Dr. Mosley made a referral for an endoscopy workup. Dr. Mosley assessed Nolen with an unspecified gastrointestinal hemorrhage, gastroesophageal reflux disease without esophagitis, and iron deficiency anemia due to chronic blood loss.

Nolen met with Dr. Greenway, a gastroenterologist who diagnosed him with hematochezia, or gastrointestinal (GI) bleeding. Dr. Greenway performed a colonoscopy

2

but was unable to find the source of Nolen's GI bleeding. In a letter to Dr. Mosley dated November 1, 2018, Dr. Greenway explained that while normally, in addition to a colonoscopy, he would perform a capsule endoscopy of Nolen's small bowel, because of Nolen's esophageal stricture he did not want to perform any additional testing unless Nolen sustained additional GI bleeding.

Nolen also had his right knee examined by Dr. Lipke, an orthopedic surgeon. Dr. Lipke withdrew fluid from Nolen's knee, but he did not recommend further treatment, and Nolen did not have any follow-up visits scheduled. Dr. Mosley noted, "Knee x-ray showed only very mild arthritic changes, not severe at all. Hopefully current treatment will continue to help. If not, we can consider a cortisone shot in his knee." At the time of the hearing before the ALJ, Nolen had returned to work at his regular job with the twenty-five-pound lifting limit, had sustained no additional episodes of GI bleeding, and did not have a course of treatment for his knee.

Nolen filed this action alleging that he sustained a compensable injury of an intestinal bleed that resulted in additional compensable injuries to his forehead and right knee. He sought temporary total–disability benefits from the date of the accident until he returned to work (June 22 to October 22, 2018) and additional medical care associated with his knee, which he claimed he continued to have issues with. On September 30, 2019, the ALJ denied Nolen's claims determining that Nolen failed to meet his burden of proof that he sustained compensable injuries. Specifically, the ALJ made the following relevant findings of fact and conclusions of law:

2. The claimant has failed to meet his burden of proof in demonstrating his episodes of hematochezia on June 16, 2018 and thereafter were in any way caused by or

3

related to his job duties. The preponderance of the evidence reveals the claimant's episodes of hematochezia were idiopathic in nature; and there exists no medical or other credible evidence establishing they were in any way caused by or related to his work duties at Walmart.

3. The claimant's idiopathic GI bleed on the evening of June 18, 2018, which resulted in a syncopal episode while he was in the Walmart bathroom causing him to fall and sustain minor and temporary injuries to his right eyebrow and right knee, does not meet the definition of "compensable injury" within the meaning of the Act.

4. For the reasons stated in Findings 2. and 3., *supra*, the claimant has failed to meet his burden of proof in demonstrating the minor, temporary injuries he sustained to his right eyebrow and right knee as a result of the syncopal episode and fall of June 18, 2018 constitute compensable injuries within the meaning of the Act.

Nolen appealed the decision to the Commission, which affirmed and adopted the ALJ's opinion. Nolen now timely appeals.

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Cent. Moloney, Inc. v. Holmes*, 2020 Ark. App. 359, 605 S.W.3d 266. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission. *Id.* When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id.* Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Cent. Moloney, Inc.*, *supra*.

Nolen claims that his GI bleed and subsequent fall due to blood loss from the GI bleed were caused by the conditions of his employment—that being heavy lifting and

4

twisting in a confined space. He argues that these injuries were compensable, work-related injuries as defined under the Arkansas Worker's Compensation Act. A compensable injury is an accidental injury causing internal or external physical harm to the body arising out of and in the course of employment and which requires medical services. Ark. Code Ann. § 11-9-102(4)(A) (Supp. 2019). An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence. *Id.* Furthermore, "[a] compensable injury must be established by medical evidence supported by objective findings, which are findings that cannot come under the voluntary control of the patient." Ark. Code Ann. § 11-9-102(4)(D).

The ALJ's stated reason for denying Nolen benefits, which the Commission adopted, was that the preponderance of the medical and other evidence revealed that Nolen's GI bleed of unknown cause was idiopathic in nature and therefore not compensable pursuant to the Act.[1] Consequently, it found that the injuries sustained to his forehead and knee as a result of fainting are also not compensable. We hold that substantial evidence supported this decision.

Nolen first argues that the characterization of his injuries as idiopathic is misguided. An idiopathic injury is one whose cause is personal in nature, or peculiar to the individual. *Crawford v. Single Source Transp.*, 87 Ark. App. 216, 189 S.W.3d 507 (2004). Injuries sustained due to an unexplained cause are different from injuries where the cause is

---

[1]When the Commission adopts the ALJ's opinion, it makes the ALJ's findings and conclusions its findings and conclusions, and for the purpose of appellate review, we consider both the ALJ's opinion and the Commission's majority opinion. *Hargis v. Lovett*, 2018 Ark. App. 227, at 5, 547 S.W.3d 724, 727.

idiopathic. *Id.* Where a claimant suffers an unexplained injury at work, it is generally compensable. *Id.* Because an idiopathic injury is not related to employment, it is generally not compensable unless conditions related to the employment contribute to the risk. *Id.*

Regarding the GI bleed, Nolen likens his case to *Crawford* and argues that his injuries should be considered compensable. In *Crawford*, we reversed the Commission's decision that the claimant suffered a noncompensable idiopathic injury to his knee; rather, we held that his injury was neither idiopathic nor unexplained but was a specific-incident injury. There, the claimant was injured when he stepped out of his cement truck, down two steep steps, and onto an oil field. As his foot reached the ground, the claimant's knee gave way or buckled, causing him to fall to the ground and to feel pain in his knee. The claimant subsequently had surgery on his knee that revealed he had a tear of the medial meniscus and osteoarthritis in his knee. We held that his injury was not simply personal in nature explaining, "[The injury] was caused while he attempted to exit his employer's vehicle from an elevated position. As a result, appellant's employment conditions contributed to his accident. Furthermore, we cannot say that appellant's injury was unexplainable as his testimony fully informs us as to the circumstances surrounding his fall." *Crawford*, 87 Ark. App. at 221, 189 S.W.3d at 511.

Similarly, in *Cedar Chemical Company v. Knight*, 372 Ark. 233, 273 S.W.3d 473 (2008), our supreme court distinguished an idiopathic injury from a specific-incident injury. There, the supreme court affirmed the Commission's finding that the claimant had suffered a compensable knee injury resulting from a specific incident where the claimant testified that his job required him to travel three flights of stairs between five and eight times during

a twelve-hour shift; that he noticed pain in his knee at one point while descending the stairs; and that several hours later, the pain worsened to the point that he could not bear weight on that leg. The claimant in *Cedar Chemical* could not identify a precise moment when the injury occurred. Instead, he could only point to when he first felt pain and explain that his pain worsened throughout the course of the day. Relying on *Crawford*, the supreme court held that the appellee gave a detailed account of his actions preceding the onset of his pain and that this was not a case in which the appellee had to occasionally walk up or down some steps. *Id*. The supreme court also noted that there was an expert opinion that the appellee's acute injury was responsible for more than 50 percent of his impairment. *Cedar Chem. Co.*, 372 Ark. at 240, 273 S.W.3d at 478.

Here, unlike the facts in *Crawford* and *Cedar Chemical*, we are lacking evidence of a specific-incident injury. Nolen is unable to point to one specific instance while working on his shifts where he felt or experienced a physical manifestation of sustaining an injury while he was at work. His testimony generally attributed his injury due to lifting excessive weight over the two shifts on June 14 through June 16, but he first noted something was wrong and experienced the symptom of bleeding while at home. While being unable to provide a specific date of injury may not be detrimental to a claimant's argument, Nolen is unable to point to a time, a place, or an occurrence. He is unable to fully develop the circumstances surrounding his injury. Furthermore, the reason behind Nolen's initial GI bleed is not identifiable.

To support his argument, Nolen points to the fact that he did not have issues of GI bleeds before this incident nor any issue since. He also finds it noteworthy that lifting was

loosely asserted with his work restrictions. He suggests that if there was no concern about the strain involved in the lifting in his job, then the lifting restriction would not have been placed. These points are speculative and do not establish a direct correlation between his injury and cause of the injury. Moreover, as the ALJ notes, none of Nolen's treating physicians related the GI bleed to his work duties.

Concerning Nolen's injuries that resulted from passing out in the bathroom, Nolen incorrectly analyzes them as a separate injury from the GI bleed. The ALJ found that Nolen fell due to syncope, which was caused by the GI bleed. These injuries occurred because of the noncompensable GI bleed, not as a result of the conditions of his employment. Consequently, for the same reasons the GI bleed is considered noncompensable, so are the injuries he sustained to his forehead and knee. Overall, we cannot say that reasonable minds could not have reached the same conclusion as the Commission. We hold there was substantial evidence to support the Commission's decision.

Affirmed.

GLADWIN and BROWN, JJ., agree.

*F. Mattison Thomas III*, for appellant.

*Ledbetter, Cogbill, Arnold & Harrison, LLP*, by: *R. Scott Zuerker* and *Victor L. Crowell*, for appellees.