Cite as 2022 Ark. App. 128

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-21-380

| | |
|---|---|
| SERENA DODSON<br>            APPELLANT/CROSS-APPELLEE<br><br>V.<br><br><br>VALLEY BEHAVIORAL HEALTH<br>SYSTEMS; INDEMNITY INSURANCE<br>COMPANY OF NORTH AMERICA;<br>ESIS, INC.; AND DEATH AND<br>PERMANENT TOTAL DISABILITY<br>TRUST FUND<br>            APPELLEES/CROSS-APPELLANTS | Opinion Delivered March 16, 2022<br><br>APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br><br>[NO. G806765]<br><br><br>AFFIRMED ON DIRECT APPEAL;<br>AFFIRMED ON CROSS-APPEAL |

**RAYMOND R. ABRAMSON, Judge**

Serena Dodson appeals the Arkansas Workers' Compensation Commission's (the Commission's) decision finding that she is not entitled to temporary partial-disability benefits after January 2, 2019, for a compensable injury she sustained while working at Valley Behavioral Health Systems (Valley Behavioral). Valley Behavioral has cross-appealed, and it argues that the Commission erred by finding that Dodson is entitled to additional medical treatment. We affirm on both direct appeal and cross-appeal.

Dodson began working at Valley Behavioral as a registered nurse in the pediatric unit in January 2017, and on September 9, 2018, she sustained a compensable injury while responding to a physical fight between patients. She was immediately transported to the

emergency room by ambulance. The results of Dodson's CT scan from the day of injury were as follows:

CT cervical spinal impression:
1. Degenerative changes noted with no acute fractures.
2. Right thyroid mass. Ultrasound correlation recommended. Findings discussed with Dr. Wooley in the emergency room.

CT thoracic spine impression:
1. Degenerative changes with no acute fractures. Thoracic stimulator device noted.

CT lumbar spine impression:
1. Multilevel degenerative changes as above with no acute fractures.

On September 11, Dr. Keith Holder, an occupational-medicine specialist, examined Dodson and diagnosed her with "[s]train of muscle and tendon of back wall of thorax, initial encounter," and "[c]ontusion of right back wall of thorax, initial encounter." He put her on restricted duty, and he recommended a follow-up appointment. On September 18 and 25, Dodson again saw Dr. Holder, and he referred her to therapy. He also recommended a case manager due to her significant pain and "prior treatment for reflex sympathetic dystrophy."

On October 9, Dodson saw Dr. Holder again, and he noted that Dodson's "battery on her spinal cord stimulator has stopped charging. It was put in for her left foot reflex sympathetic dystrophy. She has not changed her activities. Her therapy has been denied." He further noted that "[t]his is the last examination for this back strain. She will follow up in the pain clinic."

On November 6, Dr. Brian Goodman provided a pain-clinic consultation for Dodson. Dr. Goodman noted,

[Dodson] fell in Sep 2018 against a wall after breaking up a fight between patients. She hit her back. She has a spinal cord stimulator in place that was placed in 1998 for a nerve injury to her foot. The foot no longer gives her pain. The battery is dead, and she would like a new system placed to take care of her back pain. The pain is described as constant aching in the mid back. Radiation: upper and lower back.

Spinal Procedures: SCS placement 20 yrs ago

. . . .

Imaging reviewed today.
Cer/Thor/Lumbar CT from 2018, pertinent findings:
mild disc bulge, L4, L5. Other areas with mild degeneration.

Dr. Goodman referred Dodson to Dr. Johnson for evaluation on a replacement of her spinal-cord stimulator, but he advised her that the system would probably not help her upper-back pain. Dr. Goodman further noted that if the spinal-cord stimulator did not help, she could return to him for trigger-point injections. However, Dodson did not see Dr. Johnson because the workers'-compensation carrier denied her the treatment.

On January 2, 2019, Dodson saw a neurosurgeon, Dr. Luke Knox. Dr. Knox's notes from the visit state in part as follows:

As you are familiar with her history, I will suffice it to say that Ms. Dodson is a 53-year-old, right-handed white female who has had right-sided thoracic pain following a fall occurring on 9/9/18. . . .

RADIOGRAPHS/IMAGING STUDIES: Reviewing her x-rays, both the lumbar and thoracic, demonstrate no evidence of acute fracture. Reviewing the CT scan of her cervical spine demonstrate no fracture. The report of the thoracic and lumbar spine demonstrated no fracture.

IMPRESSION: I informed the patient that she is suffering from the effects of a soft tissue injury and has no evidence of spinal injury and/or nerve issue. There is no surgery that would afford any benefit to her continuing complaints.

She is four months into her continuing difficulties and I do not believe it would be worthwhile for her to pursue a Functional Capacity Evaluation as it will be invalid. She should be able to tolerate a sit-down, light-duty job. I would be happy to reevaluate her in the future to release her from her job duty restrictions.

Accordingly, she would qualify for zero (0%) permanent partial disability as this is a soft tissue injury and there is no evidence of acute bony injury. There are degenerative changes noted on the CT scan that would be preexisting to her current trauma. She has a preexisting history, obviously, of back issues that were treated with the spinal cord stimulator that has been nonfunctional for many years.

SUMMARY: To summarize, I do not believe there are any other treatment avenues available. I would recommend that she get back to restricted job requirements to a sit-down, secretarial-type job. Again, she would qualify for zero (0%) permanent partial disability. I would recommend no other treatment options at this time.

On April 17, after obtaining a change-of-physician order, Dodson saw Dr. Kyle Mangels, and he recommended that she have a thoracic and lumbar myelogram. On August 5, Dodson returned to Dr. Mangels for the myelogram. He noted a small disk protrusion at L3-4 but no fracture, severe facet disease, or any stenosis. He further noted that the "thoracic myelogram looks less normal than the lumbar myelogram." Dr. Mangels advised Dodson to see Dr. Goodman for an opinion on steroid injections in her back for pain management. He also noted that changing her "stimulator to a paddle lead might be indicated as well potentially. . . . This will be up to Dr. Goodman though." On September 27, Dr. Goodman performed a lumbar epidural-steroid injection on Dodson.

On October 16, Dodson had a follow-up appointment with Dr. Mangels. Dr. Mangels noted that Dodson "feels worse after the injection." He again noted that her spinal-cord stimulator might need to be assessed. He stated that "[e]vidently, Dr. Goodman does not take care of spinal cord stimulators or revisions," and he recommended that Dodson see Dr.

4

Traci White for pain-management treatment. He noted that Dr. White could "interrogate the system and see if [Dodson] needs the stimulator revised or changed out or a paddle lead placed and then [he] can get further involved at that time." He explained to Dodson that he generally does not treat patients with stimulators unless a paddle lead is needed.

Following her appointment with Dr. Mangels, Valley Behavioral claimed that Dodson had reached the end of her healing period and that she was no longer entitled to temporary partial-disability benefits. It also declined her additional medical treatment by Dr. White. The parties stipulated that Dodson sustained a compensable injury on September 9, 2018, but they submitted the following two issues to an administrative law judge: (1) whether Dodson is entitled to temporary partial-disability benefits and (2) whether Dodson is entitled to additional medical treatment by Dr. White.

Following a hearing, the ALJ found that Dodson was entitled to additional medical treatment in the form of a referral to Dr. White. The ALJ further found that Dodson was entitled to temporary partial-disability benefits from the date of her injury to a date yet to be determined. Valley Behavioral appealed the ALJ's decision to the Commission

The Commission affirmed the ALJ's decision concerning additional medical treatment in the form of an evaluation by Dr. White for consideration of pain management in accordance with Arkansas Code Annotated section 11-9-508(a) (Supp. 2021). The Commission specifically noted, "Based on the record currently before us, the Full Commission makes no finding with regard to whether revision or replacement of a spinal

cord stimulator is reasonably necessary in connection with the September 9, 2018 compensable injury."

As to temporary partial-disability benefits, the Commission reversed the ALJ's decision and found that Dodson's healing period ended on January 2, 2019. Thus, the Commission found that Dodson was not entitled to temporary partial-disability benefits after that day. In making the determination, the Commission credited Dr. Knox's medical opinion. The Commission further stated that its decision concerning additional medical treatment by Dr. White

> is not inconsistent with [the] finding that [Dodson] reached the end of her healing period no later than January 2, 2019. It is well settled that a claimant may be entitled to ongoing medical treatment after the healing period has ended if the medical treatment is geared toward management of the claimant's injury.

Dodson appealed the Commission's decision concerning temporary partial-disability benefits to this court, and Valley Behavioral cross-appealed the Commission's decision on additional medical treatment by Dr. White.

We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence. *Parker v. Atl. Research Corp.*, 87 Ark. App. 145, 189 S.W.3d 449 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The Commission has the duty to make determinations of credibility, to weigh the evidence, and to resolve conflicts in medical testimony and evidence. *Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 284

6

S.W.3d 91 (2008). If reasonable minds could reach the result found by the Commission, the appellate court must affirm. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858.

We first address Dodson's appeal concerning temporary partial-disability benefits. She argues that substantial evidence does not support the Commission's finding that she is not entitled to temporary partial-disability benefits after January 2, 2019. She argues that the Commission should not have credited Dr. Knox's opinion, and she points out that he did not specifically state that she had reached maximum medical improvement. She further asserts that Dr. Knox failed to give any consideration to her lumbar-spine issues, and she notes that Dr. Knox contemplated seeing Dodson in the future.

An award of temporary partial-disability benefits is appropriate during the healing period in which an employee suffers a partial incapacity to earn wages. *Amaya v. Newberry's 3N Mill*, 102 Ark. App. 119, 282 S.W.3d 269 (2008). The healing period is that period for healing of an accidental injury that continues until the employee is as far restored as the permanent character of his injury will permit and that ends when the underlying condition causing the disability has become stable and nothing in the way of new treatment will improve that condition. *Farmers Co-op. v. Biles*, 77 Ark. App. 1, 69 S.W.3d 899 (2002). The claimant has the burden of showing by a preponderance of the evidence that she remains in the healing period. *Hickman v. Kellogg, Brown & Root*, 372 Ark. 501, 277 S.W.3d 591 (2008).

When the healing period has ended is a factual determination that the Commission must make, and it will be affirmed on appeal if supported by substantial evidence. *Tyson Foods, Inc. v. Turcios*, 2015 Ark. App. 647, 476 S.W.3d 177. The Commission has the

authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Lonoke Exceptional Sch., Inc. v. Coffman*, 2019 Ark. App. 80, 569 S.W.3d 378. This court is powerless to reverse the Commission's decision regarding which medical evidence it chooses to accept when that evidence is conflicting. *SSI, Inc. v. Cates*, 2009 Ark. App. 763, 350 S.W.3d 421. However, the Commission may not arbitrarily disregard medical evidence. *Id.* Further, Arkansas does not require any specific "magic words" with respect to expert opinions, and those opinions are to be judged on the entirety of the opinion, not validated or invalided on the presence or lack of "magic words." *Averitt Express, Inc. v. Gilley*, 104 Ark. App. 16, 19, 289 S.W.3d 118, 121 (2008).

We hold that substantial evidence supports the Commission's finding that Dodson failed to establish entitlement to temporary partial-disability benefits after January 2, 2019. The Commission credited Dr. Knox's January 2, 2019 assessment of Dodson in which he found there were no other available treatment options to improve her condition and assigned her a zero percent impairment rating. We are powerless to overturn this credibility determination. Further, Dr. Knox's notes indicate that he considered both Dodson's thoracic and lumbar spine**.** Accordingly, we find no error by the Commission.

We now turn to Valley Behavioral's cross-appeal. Valley Behavioral argues that the Commission's decision that Dodson is entitled to additional medical treatment in the form of a referral to Dr. White is not supported by substantial evidence. It relies on Dr. Knox's opinion that there were no other available treatment options for Dodson, and it further points out that the treatment is based only on Dodson's subjective complaints of pain.

8

Arkansas Code Annotated section 11-9-508(a) provides that an employer is required to provide for an injured employee such medical services as may be reasonably necessary in connection with the injury received by the employee. A claimant may be entitled to additional medical treatment after the healing period has ended if said treatment is geared toward management of the injury. *Central Moloney, Inc. v. Holmes*, 2020 Ark. App. 359, 605 S.W.3d 266. Medical treatment intended to reduce or enable an injured worker to cope with chronic pain attributable to a compensable injury may constitute reasonably necessary medical treatment. *Id.*; *Nabholz Constr. Corp. v. White*, 2015 Ark. App. 102.

A claimant who has sustained a compensable injury is not required to furnish objective medical evidence to prove entitlement to additional medical treatment. *Ark. Health Ctr. v. Burnett*, 2018 Ark. App. 427, 558 S.W.3d 408. However, it is the employee's burden to prove by a preponderance of the evidence that medical treatment is reasonable and necessary. *Goyne v. Crabtree Contracting Co.*, 2009 Ark. App. 200, 301 S.W.3d 16. What constitutes reasonably necessary treatment is a question of fact for the Commission, which has the duty to use its expertise to determine the soundness of the medical evidence and to translate it into findings of fact. *Wise v. Village Inn*, 2015 Ark. App. 406, 467 S.W.3d 186. Furthermore, it is the Commission's duty to use its experience and expertise in translating the testimony of medical experts into findings of fact and to draw inferences when testimony is open to more than a single interpretation. *Central Moloney*, 2020 Ark. App. 359, 605 S.W.3d 266.

We hold that substantial evidence supports the Commission's decision that Dodson is entitled to additional medical treatment in the form of an evaluation by Dr. White. Even though the Commission credited Dr. Knox's opinion that Dodson's healing period had ended, a claimant may be entitled to additional medical treatment following the healing period if said treatment is geared toward management of the injury. Dr. Mangels referred Dodson to Dr. White for pain-management treatment. Further, the parties stipulated to a compensable injury; thus, Dodson was not required to offer objective medical evidence to prove entitlement to additional benefits. Accordingly, we find no error on cross-appeal, and we affirm the Commission's decision.

Affirmed on direct appeal; affirmed on cross-appeal.

VIRDEN and MURPHY, JJ., agree.

*Walker Law Group, PLC*, by: *Eddie H. Walker, Jr.*, for appellant/cross-appellee.

*Mayton, Newkirk, and Jones*, by: *L. Eric Newkirk*, for appellees/cross-appellants.