DINWIDDIE *v.* SYLER.

5-1826                                        323 S. W. 2d 548

Opinion delivered April 20, 1959.

[Rehearing denied May 25, 1959]

*Carlos B. Hill,* for appellant.

*James R. Hale* and *Lovell & Evans,* for appellee.

CARLETON HARRIS, Chief Justice. Belle A. Dinwiddie, appellant, instituted suit against Ethel Syler, appellee, in the Washington County Circuit Court, alleging ownership of certain lands in Washington County, and asserting that appellee had destroyed shade trees, shrubbery, grass and vegetation on said lands; actual damages in the amount of $2,000 were alleged because of Mrs. Syler's trespass on the property, and judgment was sought for treble damages. After a motion had been filed to make the allegations of the complaint more definite and certain, an amended and substituted complaint was filed, to which appellee answered, denying all material allegations, and asserting her ownership of at least a part of the lands in dispute. After the filing of additional pleadings, the cause came on for trial September 10, 1958, at which time it appeared that an agreement had been reached between the litigants. The following proceedings took place in open court on that date.

"The Court: It is agreed between the parties in open court, as follows: That the plaintiff will dismiss her contention . . .

Mr. Hale: No. No, sir, we want this to be a judgment — a final judgment.

The Court: Just a minute. Will dismiss her contention for recovery of damages for loss of timber and by agreement, the property line between the plaintiff and defendant is agreed to be a line — an extension of the old fence line now in existence between the two properties from its termination at the present point on to the old Jefferson Highway. It is further agreed that termination of said extension of said fence line at the old Jefferson Highway will be marked by an iron stake determined and placed there by the County Surveyor, Ralph Shreve, which line is mutually agreed between the parties to be the established property line between the 70

feet owned by Syler and the 75 feet owned by Dinwiddie, as follows:

Part of the Northeast quarter of the Northeast quarter of Section twenty-four (24) in Township thirteen (13) North, of Range thirty (30) West, more particularly described as follows: Beginning at a point which is four and sixty-one hundredths (4.61) chains North and two hundred (200) feet South 86¾° East of the South West corner of said forty acre tract, and running, thence East bearing South with the South line of the Dunlap Road seventy-five (75) feet; thence South 12° West two hundred sixty five (265) feet to the North line of the Right of Way of old route of U. S. Highway No. 71 (now "Jefferson Highway"); thence Westerly with the North line of said Highway Seventy-five (75) feet; thence North 12° East two hundred sixty five (265) feet to the beginning point.

It is further agreed that the County Surveyor's plotted description, by metes and bounds, will be presented to the Court and become a part of this order.

Mr. Lovell: With the west line run parallel.

The Court: You can state it any way you want to, but that is a suggested form. * * *

The Court: When Mr. Shreve has extended that line and put in the iron stake there, it is understood that Mr. Hill is dismissing his suit for the destruction of trees.

Mr. Evans: That is what we asked a while ago. We want the Court to direct a verdict for damages on that.

The Court: When I prepare a formal order, I will, certainly. And in addition to that, by agreement the property line has been established between Miss Dinwiddie and Mrs. Syler as it pertains to these particular lots involved here in Dunlap Heights to the town of Winslow, as being a continuation of the existing old fence now between the Syler property and the Dinwiddie property, which fence does not extend the whole length of the boundary, but that the agreed and established boundary shall be a continuation of the existing fence on to its in-

tersection with the Jefferson Highway, to be established by the County Surveyor.

Mr. Lovell: One suggestion we were talking about a while ago. He says that fence gives it this (indicating a crooked line) so let's start with the fence post at the northeast corner of that Syler lot and run in a straight line to this tree where all this wire is piled around and then make that a straight line and go right straight down.

Mr. Hill: If the Court please, I want to suggest that Mr. Shreve's survey already shows only a difference of two feet between the wall and his survey line back to the rock wall across Mrs. Syler's lot. For the purpose of description, I think the present survey would be sufficient to go into this order.

Mr. Lovell: I won't go with that. The only thing I will go with, Judge, is starting up at that northeast corner and going down to that tree where the wire is and going straight down.

The Court: There needs to be a stake down at that other end so you will all know that this is the boundary line and firmly established and there will be no more difficulty. I think that is an important point.

Mr. Shreve: What I want to know is what two points in the fence are to be considered the line.

The Court: The tree with the wire around it.

Mr. Lovell: And the post in the northeast corner.

The Court: And the first post in the northeast corner. Is that all right with you, Mr. Hill?

Mr. Hill: I don't know where the fence post is, but

. . .

The Court: It is the first fence post on that road. The first one. Is that right? Does every body understand the stipulation there, which will be reduced to a formal order when Mr. Shreve furnishes the particular information, and Mr. Lovell, will you prepare an order?"

Pursuant to these proceedings, Mr. Shreve made the survey. At a subsequent hearing on October 7th, rela-

tive to his findings, Shreve testified that he undertook to make the survey in accordance with his understanding of the stipulation, but that he did not complete the one first started, because appellee objected to the location of the line; that subsequently, Mr. Lovell, attorney for Mrs. Syler, together with appellee, came and pointed out a certain fence post from which he was to begin, and the survey was then made in accordance with their instructions. The court accepted the survey as being correct, and entered judgment establishing the boundary line in accordance therewith. From such judgment, comes this appeal.

For reversal, appellant asserts that the survey was not made in compliance with the order of the court, and further, that same was made at the direction of the appellee and without notice to the appellant. Under the conclusion we have reached, it is not necessary to discuss the second point, nor is a detailed discussion of the actual survey necessary.

Had the metes and bounds description, recited by the court on September 10th, been used, the surveyor would have commenced at a point approximately 11 feet north of the beginning point actually used in making the survey presented at the court hearing on October 7th. In using the starting point directed by appellee, the surveyor accordingly ran a number of feet farther south, and as the line was run, there was a gradual veering to the east from the metes and bounds description, and a consequent encroachment on the latter until a difference of about 8 feet at the extreme south was reached. The confusion apparently occurred because appellee's counsel would not accept the description contended for by appellant, but stated, "I won't go with that. The only thing I will go with, Judge, is starting up at that northeast corner and going down to that tree where the wire is and going straight down. * * * And the post in the northeast corner." Mr. Lovell apparently felt that his suggestion would be followed in making the survey. When asked by the court, "Is that all right with you, Mr. Hill?", counsel replied, "I don't know where the fence post is, but ——." The record reflects no further agreement, and we certainly cannot say that the

statement by appellant's counsel, just quoted, constituted agreement to start the survey at the point suggested by appellee's counsel. It appears to us that, though the court proceeding of September 10th is termed "Stipulation", no actual agreement was reached between the parties as to the making of the survey. A stipulation is defined, in law, as "an agreement between attorneys respecting the conduct of legal proceedings." According to Bouvier, "A material article in an agreement." Apparently, no agreement was reached. That the session of September 10th was confusing, is shown by the fact that Mr. Shreve first undertook to survey the premises under the description which is here advocated by appellant, and only started over when advised by appellee that he had commenced at the wrong point. As he stated, "* * * I'm very much confused now. * * *" We can readily understand this confusion. It appears that in fairness to all parties, a new stipulation should be entered into, or the case should proceed to trial.

The judgment is reversed, and the cause remanded, with directions to proceed in a manner not inconsistent with this Opinion.