Cite as 2023 Ark. App. 134

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-22-320

GLENN CARTER

APPELLANT

V.

GEA NORTH AMERICA, INC.; AND
SENTRY INSURANCE COMPANY
INSURANCE CARRIER/TPA

APPELLEES

Opinion Delivered March 8, 2023

APPEAL FROM THE ARKANSAS
WORKERS' COMPENSATION
COMMISSION
[NO. H010320]

AFFIRMED

## RITA W. GRUBER, Judge

Glenn Carter appeals from a decision of the Arkansas Worker's Compensation Commission (Commission) finding that Carter failed to prove by a preponderance of the evidence that he suffered a compensable injury to his low back on November 24, 2020, and denying his claim for medical treatment and temporary total-disability (TTD) benefits. Appellees are Carter's employer, GEA North America, Inc. (GEA), and Sentry Insurance Company Insurance Carrier/TPA. The only issue on appeal is whether the evidence is sufficient to support the Commission's decision. We affirm.

On September 8, 2021, a hearing was held before the administrative law judge (ALJ) to litigate (1) the compensability of Carter's lumbar spine condition; (2) whether Carter was entitled to reasonable and necessary medical treatment; (3) whether Carter was entitled to TTD; and (4) attorney's fees. The parties had previously stipulated that (1) the Commission

had jurisdiction of the claim; (2) on November 24, 2020, the relationship of employee-employer-carrier existed among the parties; and (3) the compensation rates were $711 weekly for TTD benefits and $533 for permanent partial-disability benefits.

On November 24, 2020, Carter, a traveling service technician for GEA, was rear-ended in his company truck. Carter refused medical treatment at the scene, the airbags did not deploy, his truck remained operable, and Carter drove it home.

The next day, Carter worked his regular schedule, which involved driving to Fayetteville. While in Fayetteville, Carter sought treatment at an emergency room (ER) for complaints of left shoulder pain along with some right shoulder pain. He specifically denied any lower-back pain. During the exam, his treating physician noted a complete absence of tenderness or other symptoms with respect to his back ("negative for arthralgia, back pain, or myalgia"), documenting that there were "no other injuries or complaints" beyond Carter's shoulder. The ER records also reflected "no spinal tenderness to palpation." The x-ray results indicated "degenerative changes of the left shoulder with no evidence of acute fracture or traumatic malalignment."

Carter continued working until December 5, 2020, when he testified that he woke up and his left leg was numb. Carter was seen in an ER that day, with an admissions diagnosis of "dorsalgia, unspecified" and a final principal diagnosis of lumbago with sciatica, unspecified site, as well as "other muscle spasm." His chief complaint was lower-back pain or "discomfort" radiating down into both of his legs, with some occasional numbness. His exam reflected "positive for back pain and myalgias" and negative for "arthralgias, joint swelling,

2

neck pain and neck stiffness," with "normal range of motion," and generally "no swelling or signs of injury." Carter also exhibited "tenderness and spasm" in his lumbar back. The findings of Carter's lumbar spine x-ray were as follows:

> the lumbar spine demonstrates no acute compression deformity. The T12-L1 disc is severely narrowed with endplate sclerosis and spurring. The L4-5 disc is severely narrowed. There is slight anterolisthesis of L3 on L4. No acute compression deformity is seen. There is severe apophyseal joint degenerative hypertrophy. There is mild S-shaped curvature of the thoracolumbar spine.

The impression was "severe degenerative disease with no acute osseous abnormality." Carter was diagnosed with arthritis in his lumbar spine and was told to continue taking medications and use a heating pad as needed and, if there was no improvement, to consider a follow up with an MRI. Carter responded that the pain was "not bad," and he was "not interested in surgery" at that time.

On December 15, 2020, Carter was treated at Mercy Clinic Ortho and Sports by Dr. Dominic Jacobelli. An x-ray reflected "severe degenerative disease with no acute osseous abnormality." Dr. Jacobelli prescribed Carter oral medication and referred him for physical therapy (PT), which Carter received on December 21, 23, 28, and 30, 2020, and January 4, 6, 12, 14, 19, and 21, 2021. At the December 30 PT visit, Carter reported that "he has been doing fine. He has not dealt with too much soreness, pain, or stiffness." Carter was treated by Dr. Jacobelli again on January 11, 2021, for complaints of low-back pain. Dr. Jacobelli's records reflect that previous x-rays and a CT scan showed no acute fracture. Those records also reflect that Carter reported having pain in his lower back prior to the "injury" and that Dr. Jacobelli "explained to Carter in detail that he does not have a [sic] injury." On February

3, 2021, Carter received an MRI, which reflected a number of degenerative issues, none acute. Dr. Jacobelli referred Carter to a pain clinic for lumbar injections.

On February 11, 2021, Carter was seen by Dr. David Benson at Mercy Pain Clinic in Rogers. On February 19, Carter treated with a chiropractor. On February 22, Carter received epidural injections for pain management. On April 14, Carter was seen by Dr. Christopher Carter, his primary care physician, for a follow-up visit regarding "chronic low back pain."

Carter received TTD benefits and medical benefits from GEA through March 22, 2021. GEA then denied further benefits, and Carter filed a claim with his group health insurance, CIGNA.

On June 15, 2021, Dr. Charles Jones, a neurosurgeon, performed an L3-L4-L5 posterolateral spinal fusion, an L3-4 bilateral decompressive laminectomy with partial medial facetectomies, an L4-5 bilateral decompressive laminectomy with partial medial facetectomies, and removal of benign intracanal extradural mass (facet joint synovial cyst) on Carter. Dr. Jones noted postoperatively that Carter had "severe degeneration at L3-5," and he "did not see any acute trauma," but "severe degeneration . . . causing stenosis in conjunction with the spondylolisthesis at L4-5."

That surgery was paid for by CIGNA. CIGNA had initially declined to pay for the surgery due to its position that the surgery should be covered by GEA's workers'-compensation provider. However, after consulting with Dr. Jones, CIGNA changed its position and covered the surgery.

Carter testified that he has a history of low-back pain; he began receiving chiropractic treatment at Hines Chiropractic Clinic in Rogers in 1983; he was continually treated by a chiropractor every three to four months; and he was fairly certain that he was treated for low-back pain sometime in 2020. Carter described the previous pain as more of a muscle spasm, an aching kind of pain; whereas after the accident, it has been more of a specific grinding, burning pain that occurred over his right hip bone and that he was experiencing low-back pain that radiated into his right leg, all of which was new. However, Carter's testimony confirmed that he had radiculopathy in both legs, spasms, and sharp low-back pain before the accident, and his previous pain levels were higher on the pain scale.

On September 29, 2021, the ALJ issued an opinion determining that Carter had not proved by a preponderance of the evidence that he had sustained a compensable injury to his lumbar spine due to a work-related injury sustained on November 24, 2020, or an exacerbation of a preexisting condition. Therefore, he was not entitled to additional TTD or medical benefits. As a result, all other issues and associated benefits with his claim were rendered moot and were not discussed in the opinion. On October 5, 2021, Carter appealed to the Full Commission, and on January 25, 2022, the Full Commission filed an opinion affirming and adopting the ALJ's decision. This timely appeal followed.

When the Commission affirms and adopts the ALJ's opinion, thereby making the findings and conclusions of the ALJ the Commission's findings and conclusions, we consider both the ALJ's opinion and the Commission's opinion in our review. *Watson v. Highland Pellets, LLC*, 2022 Ark. App. 132, at 5, 643 S.W.3d 267, 270. When the Commission denies

benefits because the claimant has failed to meet his or her burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission; if so, the appellate court must affirm. *Id.* Credibility questions and the weight to be given to witness testimony are within the Commission's exclusive province. *Id.* It is also within the Commission's province to weigh all the medical evidence and to determine what is most credible. *Id.* We have long held that the Commission's decision to accept or reject medical opinions and how it resolves conflicting medical evidence has the force and effect of a jury verdict. *Id.*

An employer takes the employee as the employer finds him, and employment circumstances that aggravate preexisting conditions are compensable. *Vaughn v. Midland Sch. Dist.*, 2012 Ark. App. 344, at 2. A preexisting disease or infirmity does not disqualify a claim if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the disability for which workers'-compensation benefits are sought. *Id.* An aggravation of a preexisting noncompensable condition by a compensable injury itself is compensable. *Webb v. Wal-Mart Assocs., Inc.*, 2018 Ark. App. 627, at 5, 567 S.W.3d 86, 90. An aggravation is a new injury resulting from an independent incident, so it must meet the definition of a compensable injury to establish compensability for the aggravation. *Liaromatis v. Baxter Cty. Reg'l Hosp.*, 95 Ark. App. 296, 299, 236 S.W.3d 524, 527 (2006). A compensable injury must be established by medical evidence supported by objective findings, which are

6

findings that cannot come under the control of the patient, such as complaints of pain or tenderness. *Ozark Nat. Food v. Pierson*, 2012 Ark. App. 133, at 9, 389 S.W.3d 105, 110. As interpreted by our appellate courts, this means that an aggravation, being a new injury, must be evidenced by objective medical findings of a new injury to the preexisting condition. *Vaughn*, 2012 Ark. App. 344, at 2. It is the injury for which appellant seeks benefits that must be supported by objective medical findings. *Liaromatis*, 95 Ark. App. at 299, 236 S.W.3d at 527.

In order to prove a compensable injury as a result of a specific incident that is identifiable by time and place of occurrence, a claimant must establish the following by a preponderance of the evidence: (1) an injury arising out of and in the course of employment; (2) that the injury caused internal or external harm to the body which required medical services or resulted in disability or death; (3) medical evidence supported by objective findings, as defined in Ark. Code Ann. § 11-9-102(16) (Repl. 2012), establishing the injury; and (4) that the injury was caused by a specific incident identifiable by time and place of occurrence. *Odd Jobs & More v. Reid*, 2011 Ark. App. 450, at 4–5, 384 S.W.3d 630, 632 (citing Ark. Code Ann. § 11-9-102(4)(A)(i) (Supp. 2009)).

On appeal, Carter contends that the ALJ erred in finding that he failed to prove by preponderance of the evidence that he suffered either a compensable injury or an exacerbation of a preexisting injury to his low back on November 24, 2020. He argues that the objective medical evidence more than supported his burden of proof because, while it was "no secret" that he received chiropractic care for low-back pain "for decades," he had

7

not been to the chiropractor since 2018. Carter further argues that his claim should not have been denied because prior to the accident, he had never required treatment from a neurosurgeon or surgery, and the low-back pain he experienced prior to the accident was different from the low-back pain he experienced after it. GEA responds that Carter lacked credibility as a witness, his low-back problems predated the accident, and he failed to provide evidence of new objective findings of an acute injury.

We now turn to the Commission's decision. The ALJ, after reviewing all the evidence in the case, specifically determined that Carter had an extensive history of low-back pain, and Carter's testimony that his pre-accident pain was different than his post-accident pain was contradicted by his medical records. The ALJ further relied on the fact that, while Carter's last visit to Hines Chiropractic Clinic was in August 2018, Carter admitted that he received chiropractic care for his lower back from Dr. Josh Jones in 2020. The ALJ further found that Carter's testimony that immediately after the accident he felt like he had "been hit in the back with a sledgehammer" was belied by the incontrovertible evidence that he had been treated the day after the accident in an ER only for complaints of shoulder pain, he made no complaints about back pain, and his examination was negative for back pain. The ALJ also found relevant that Carter did not seek any further medical treatment until December 5, after having been off work for several days due to the Thanksgiving holiday and after having driven to Broken Bow, Oklahoma, to inspect thirteen compressors for GEA.

Carter bears the burden of proving by a preponderance of the evidence that he suffered a compensable injury to his lower back on November 24, 2020. Here, the

8

Commission credited Carter's medical records, including statements contained within his medical records by him, rather than his testimony. It is undisputed that Carter's low-back complaints predated the accident, and he presented no evidence of new objective findings of an acute injury. His medical records reflected that he suffered from degenerative issues— not an acute injury. Carter did not establish by medical evidence supported by objective findings that he had sustained a new injury or an aggravation of a preexisting injury. *See Liaromatis*, *supra*; *Ozark Nat. Food*, *supra*. Carter essentially asks us to reweigh the evidence and credibility findings made by the Commission; however, once the Commission has made its decision on issues of credibility, we are bound by that decision. *Watson*, *supra*. The Commission's denial of benefits was supported by substantial evidence, and reasonable minds could have reached the result found by the Commission. As such, we affirm.

Affirmed.

ABRAMSON and BARRETT, JJ., agree.

*Caddell Reynolds*, by: *Matthew J. Ketcham*, for appellant.

*Worley, Wood Parrish, P.A.*, by: *Jarrod S. Parrish*, for appellees.