Cite as 2025 Ark. App. 405

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CV-24-738

| | |
|---|---|
| KIMBERLY TAYLOR | Opinion Delivered September 3, 2025 |
| APPELLANT | |
| | APPEAL FROM THE ARKANSAS |
| | WORKERS' COMPENSATION |
| V. | COMMISSION |
| | [NO. H009300] |
| HINO MOTORS MANUFACTURING | |
| U.S.A., INC.; AND SOMPO AMERICAN | |
| INSURANCE CO. | |
| APPELLEES | AFFIRMED |

**CINDY GRACE THYER, Judge**

Kimberly Taylor appeals from an order of the Arkansas Workers' Compensation Commission ("the Commission") finding that she had not sustained a compensable low back injury, was not entitled to additional temporary total-disability benefits for her compensable right shoulder injury, and was not entitled to attorney's fees. We find no error and affirm.

I. *Factual and Medical Background*

This dispute centers on the nature and extent of injuries Taylor claims she sustained when she tried to dislodge an axle on a conveyor belt on her third day working for appellee Hino Motors Manufacturing U.S.A., Inc. ("Hino"). On October 21, 2020, as she was attempting to pull an axle that had become stuck, Taylor felt "a little pull and sting to her right upper back." The pain became worse as she continued to work. After she reported the incident, she went to see APN Christopher Gross at Coast to Coast Medical. He noted her

chief complaint or concern was "hurt lower right side back pulling on part." Upon evaluation, Gross found her tender to palpation to the right upper back and resistant to evaluation secondary to pain. He diagnosed her with right upper back strain and prescribed Toradol, ice, and over-the-counter Motrin or Aleve for pain. He then released Taylor to work the same day with no restrictions.

Taylor returned to APN Gross on November 6, 2020. On that date, Gross repeated Taylor's description of the incident––that she felt "a little pull and sting to her right lower back" and added that when she woke up on October 22, she noticed a pain in her right shoulder that caused decreased function to that shoulder. Taylor reported that she had been working that day, but the pain was worse than when the injury occurred. Gross noted that Taylor was tender to palpation to her right lower back, right upper back, and shoulder and had limited range of motion in her shoulder. His updated diagnosis reflected "right upper back strain, right shoulder pain, lower back pain," and he prescribed physical therapy; heat to her back and shoulder; and tramadol, Zanaflex, and Motrin. At that time, Gross took Taylor off work until she was released from physical therapy.

A radiology report from November 6 noted that Taylor had a "normal right shoulder" with no fractures or dislocations, with normal-appearing soft tissues, and no lesions or significant arthritic changes identified. Views of her lumbar spine also showed no acute abnormalities, fractures, or dislocations, although mild arthritic changes were noted.

Taylor began physical therapy on November 19, 2020. Medical records from her first visit showed that her chief complaint was pain in her right shoulder following an injury to

2

that shoulder at work. Her physical-therapy records, dated from November 19 through December 15, 2020, reflected treatment for her shoulder only.

On December 28, 2020, APN Gross noted Taylor's report that she had been going to physical therapy, and the pain in her shoulder had only been getting worse, while the pain in her lower back was about the same. Gross reiterated the diagnoses of right upper back strain, right shoulder pain, and lower back pain and kept Taylor off work until released by the physical therapist. He prescribed Tylenol-Codeine #3, Zanaflex, and Motrin and ordered an MRI of her right shoulder.

Taylor underwent an MRI of her shoulder on March 23, 2021. The findings of the MRI showed that "[t]he AC joint is normal. A trace of fluid and edema is present in the subacromial bursa compatible with mild bursitis. The tendons of the rotator cuff are intact. Biceps tendon is intact. Irregularity of the mid to posterior portion of the superior labrum is compatible with SLAP tear. The labrum is otherwise intact. . . . OPINION: 1. SLAP tear. 2. Mild subacromial bursitis."[1]

After the MRI, Taylor saw Gross again on March 25, 2021. She continued to complain that the pain in her shoulder was worse than when she began treatment, and the pain in her lower back was now radiating into her right leg. Gross referred her to an orthopedist and suggested an MRI of her lumbar spine.

---

[1]A SLAP tear, or "Superior Labrum, Anterior to Posterior" tear, is an injury that happens when a person tears cartilage in the inner part of his or her shoulder joint. https://my.clevelandclinic.org/health/diseases/21717-slap-tear.

Taylor saw Dr. David Brown at OrthoSouth on May 6, 2021. His notes from that visit reflect the following:

> This is a 40 year old female who is being seen for a chief complaint of right shoulder pain. The pain began on 10/21/20 after she pulled on a piece of equipment at work that strained her shoulder. She describes a sharp, throbbing pain located diffusely throughout the shoulder that radiates down the arm. The pain worsens when getting dressed and with reaching motions. She also complains of swelling.

> X-rays of the right shoulder reveal no obvious fractures. Her glenohumeral joint is reduced. She has a downsloping acromion.

> The patient continues to complain of pain over 6 months out from her injury. She has tried physical therapy, rest, and anti-inflammatories. She describes her pain as sharp. Her medical records state that she has a possible SLAP tear. I will obtain the patient's right shoulder MRI and make further recommendations. In the meantime, I will give the patient a prescription for diclofenac. She will work on range of motion exercises. I will see her back once the MRI has been obtained. In the meantime I will place her on light duty with no use of her right arm restriction.

Taylor followed up with Dr. Brown on May 18, 2021. He noted that "by report, the patient has a SLAP tear in her right shoulder." He said he was "concerned about proceeding with surgery with the patient's current stiffness." He gave her a steroid injection, started her back on physical therapy, said he would see her again in four weeks, and kept her on light-duty work.

Dr. Brown reviewed the MRI of Taylor's shoulder in June 2021 and concurred that it revealed an abnormal signal at the superior labrum along with mild subacromial bursitis; he recommended continued physical therapy. Taylor saw Dr. Brown again in July, by which time Taylor had been to only one physical therapy appointment. Taylor advised that there had been "scheduling and communications issues with Workmen's Comp." Dr. Brown was

still hesitant to recommend shoulder surgery, although he believed she would benefit from it. He also stated he thought she would benefit from a second opinion to discuss treatment options.

After an August 12 follow-up visit, Dr. Brown wrote as follows:

> [Taylor] continues to complain of pain and stiffness. Her daughter recently passed away with Covid. She has not been able to do physical therapy secondary to her daughter's situation. I am very hesitant to proceed with any sort of surgery considering the amount of patient's stiffness and apprehension with range of motion. She has evidence of a SLAP tear that occurred in October 2020. I recommend the patient undergo an independent medical exam with an option to treat via a second opinion. I will keep her on light duty at work.

Before obtaining the recommended second opinion, Taylor visited her primary care physician (PCP) on February 7, 2022, complaining of low back pain and problems with her allergies. At that time, she was diagnosed with allergic rhinitis and lumbago and told to make a follow-up appointment in two weeks for her back. At that appointment in March 2022, her chief complaint was dizziness, but that medical record also noted lumbago as an "active problem." At that time, she was referred to physical therapy for "low back pain . . . suspect muscle spasm"; her PCP ordered a lumbosacral x-ray and a prescribed a "trial [of] cyclobenzaprine" (a muscle relaxant).

Meanwhile, Taylor saw Dr. Charles Pearce on February 28, 2022, for the second opinion recommended by Dr. Brown. Dr. Pearce acknowledged the SLAP tear visualized by the MRI but observed "no obvious abnormality to inspection." He ordered x-rays of her "surgical" [sic] spine and right shoulder. The x-rays showed "no significant acute abnormality. There may be slight straightening of her lordotic curve. MRI scan from March 23, 2021, is a

5

noncontrast scan and shows some possible undercutting of her superior labrum that was a labile slap tear. However this can be a normal finding as well." Dr. Pearce's impression was that of "right shoulder, shoulder girdle, arm pain and weakness not consistent with MRI finding of slap tear." He recommended a functional capacity evaluation (FCE) prior to any further diagnostic testing or treatment.

Taylor underwent the FCE on April 6, 2022. Regarding Taylor's reliability and consistency of effort, the examiner wrote that "[c]onsistency of effort testing obtained during this evaluation indicate significant observational and evidence based inconsistencies resulting in self-limiting behavior and sub-maximal effort. The results of this evaluation indicate that an unreliable effort was put forth, with 27 of 52 consistency measures within expected limits." Although Taylor's inconsistencies "invalidated her entire evaluation," she demonstrated the ability to perform work in at least the sedentary classification of work.

Following the FCE, Dr. Pearce wrote an addendum to his previous note, finding that Taylor had reached maximum medical improvement and could return to work duties without restriction. He stated there was no indication for further diagnostic testing or treatment, and he concluded that Taylor had sustained a 0 percent permanent partial impairment to her upper extremity.

Taylor reported that she continued to experience low back pain despite her physical therapy. In April 2022, her PCP referred her to pain management because she had been going to physical therapy for a month "without much relief." Shortly thereafter, she experienced urinary incontinence during physical therapy, so her doctor ordered an MRI to

6

look for any spinal cord pathology. (The record before us, however, does not contain a report of any such MRI.)

Taylor began treatment at Pain Treatment Centers of America on October 6, 2022. She presented "for lower back pain, shoulder pain, mid back pain, hip pain, knee pain, chest pain, multiple joint pain evaluation and management." During her physical exam, palpation of the bilateral sacroiliac joints and bilateral trochanteric bursa palpation failed to reproduce pain, but palpation of the lumbar facet joints reproduced her lower back pain. Tenderness was present over her entire shoulder joint area; swelling was absent, but there was crepitus at the acromioclavicular and glenohumeral joints. Taylor received a suprascapular nerve block for her shoulder pain on October 24, 2022. After receiving a diagnosis of spondylosis, Taylor underwent a diagnostic lumbar medial branch block in December 2022 to determine the source of her back pain "because there [was] a discrepancy between pathology and complaints." Taylor continued to undergo various nerve-block procedures for back pain from late 2022 through February 2023.

## II.  *Procedural Background*

The record indicates that Hino initially accepted Taylor's right shoulder claim as compensable and paid temporary total-disability (TTD) benefits from November 6, 2020, through May 12, 2022. However, Hino has consistently controverted the compensability of Taylor's alleged back injury.

Following a prehearing telephone conference on July 24, 2023, the administrative law judge (ALJ) issued a prehearing order outlining what was discussed in the conference,

7

including the stipulations agreed to by the parties and the issues to be litigated at the subsequent hearing. The ALJ included among the stipulations that Hino "initially accepted [Taylor's] alleged right shoulder injury as compensable and paid medical and [TTD] benefits pursuant thereto; but they have now controverted this claim in its entirety." The order further reflected that the issues to be litigated were (1) whether Taylor sustained compensable injuries by specific incident to her back and right shoulder; (2) whether Taylor was entitled to reasonable and necessary medical treatment; (3) whether Taylor was entitled to additional TTD benefits; and (4) whether Taylor was entitled to a controverted attorney's fee.

At the outset of the October 27, 2023 hearing, Hino sought to amend the stipulation regarding the shoulder injury, claiming a mistake had been made. Hino proposed that the stipulation should be modified to read that Hino accepted Taylor's right shoulder injury as compensable, that TTD benefits were paid to her up to maximum medical improvement (MMI), and that Hino was controverting only the compensability of the back injury. Taylor objected to the amendment or withdrawal of the stipulation because it would have the effect of reducing the amount of attorney's fees that could be recovered. The ALJ took Hino's request to amend or withdraw the stipulation under advisement and proceeded to hear the issues originally designated for adjudication.

Following that hearing, the ALJ issued an opinion on January 23, 2024, and an amended opinion the next day. The ALJ determined that Taylor had proved she sustained a compensable injury to her right shoulder, but she had not proved she sustained a compensable injury to her lower back. The ALJ further found that Taylor was entitled to

8

reasonable and necessary medical treatment of her compensable right shoulder injury; however, the ALJ found she had not proved her entitlement to additional TTD benefits beyond what Hino had already paid. Finally, after denying Hino's request to amend or withdraw its stipulation, the ALJ ruled that Taylor was entitled to a controverted attorney's fee on the indemnity benefits previously paid on the shoulder claim.

Taylor appealed the ALJ's opinion to the full Commission, and Hino cross-appealed. The Commission affirmed the ALJ's opinion in part and reversed in part. The Commission agreed that Taylor had proved she sustained a compensable injury to her right shoulder and that the medical treatment related to that injury was reasonably necessary. It further agreed that Taylor failed to prove she sustained a compensable lower back injury or that she was entitled to additional TTD benefits. It reversed the ALJ's decision regarding attorney's fees, however. Taylor filed a timely notice of appeal and now argues that the Commission erred in its findings regarding the existence of a compensable low-back injury, her entitlement to TTD, and the issue of attorney's fees.

III.  *Standard of Review*

When the Commission denies benefits because the claimant has failed to meet his or her burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Osburn v. Pepsi Cola Metro Bottling Co.*, 2021 Ark. App. 157, at 6. The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission; if so, the appellate court must

9

affirm. *Id.* Credibility questions and the weight to be given to witness testimony are within the Commission's exclusive province. *Pack v. Little Rock Convention Ctr.*, 2013 Ark. 186, 427 S.W.3d 586. It is also within the Commission's province to weigh all the medical evidence and to determine what is most credible. *Minn. Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999). We have long held that the Commission's decision to accept or reject medical opinions and how it resolves conflicting medical evidence has the force and effect of a jury verdict. *Howell v. Arkadelphia Hum. Dev. Ctr.*, 2023 Ark. App. 441, at 5, 675 S.W.3d 925, 928.

IV. *Discussion*

A. Compensable Lower Back Injury

In her first point on appeal, Taylor argues that the Commission erred in finding that she failed to prove that she sustained a compensable injury to her lower back. Taylor, as the claimant, had the burden of proving by a preponderance of the evidence that she sustained a compensable injury. *Rodriguez v. M. McDaniel Co.*, 98 Ark. App. 138, 144, 252 S.W.3d 146, 152 (2007). A compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D) (Supp. 2023). Objective findings are those that cannot come under the control of the patient, such as complaints of pain or tenderness. *Carter v. GEA N. Am., Inc.*, 2023 Ark. App. 134, at 6–7, 662 S.W.3d 685, 690; *Ozark Nat. Food v. Pierson*, 2012 Ark. App. 133, at 9, 389 S.W.3d 105, 110.

In support of its finding that Taylor failed to prove she sustained a compensable lower back injury, the Commission referenced the multiple medical records in which Taylor's

complaint was of pain in her lower back. It cited APN Gross's October 21, 2020 report--the day of the incident--that Taylor was "tender to palpation" but commented that "'tenderness' is not an objective medical finding establishing a compensable injury." It further noted the November 2020 x-ray of Taylor's lumbar spine that showed "mild arthritic changes" and "no acute abnormality," adding that nothing in the evidence connected the arthritic changes to the October 2020 incident. It also determined that there was no credible evidence that Taylor suffered from muscle spasms in her back as a result of the incident. On the basis of these records, the Commission found that Taylor failed to present objective findings supporting her claim that she sustained a compensable lower back injury.

On appeal, Taylor argues that the Commission ignored medical evidence in reaching its decision. *See, e.g.*, *Sosa v. Kawneer Co., Inc.*, 2022 Ark. App. 195, 645 S.W.3d 26 (noting that the Commission may not arbitrarily disregard medical evidence). Taylor contends that the Commission disregarded evidence that she sustained a lumbar strain, that she complained of pain to her lower back, and that she was prescribed medications such as anti-inflammatories and muscle relaxants. Citing *Melius v. Chapel Ridge Nursing Center, LLC*, 2021 Ark. App. 61, 618 S.W.3d 410, Taylor contends that a diagnosis of muscle strain along with a prescribed treatment of medications, physical therapy, and pain management is sufficient to establish objective medical findings. Further, citing *Estridge v. Waste Management*, 343 Ark. 276, 282, 33 S.W.3d 167, 171 (2000),[2] Taylor points to Dr. Pearce's "finding" of a

---

[2] *Estridge* held that the straightening of the curve of the spine "is a sign that is normally associated with muscle spasm in the straightened area."

11

straightening of her lordotic curve as proof that there were objective medical findings to support a finding of a compensable injury.

Taylor, however, was never diagnosed with a lumbar strain nor specifically found to have straightening in the lordotic curve in her lumbar spine. The March 4, 2022 office note from which she apparently gleans this diagnosis of lumbar strain stated only, "Low back pain––referral to PT as *suspect* muscle spasm." (Emphasis added.) Similarly, Dr. Pearce's note stated that "X-rays ordered and interpreted by me surgical [sic][3] spine and right shoulder show no significant acute abnormality. There *may be* slight straightening of her lordotic curve." (Emphasis added.) Without specifying that the x-ray was of Taylor's lumbar spine or definitively stating that there *was* straightening of the lordotic curve in the lumbar spine, Dr. Pearce's note provides no support to Taylor's argument. Moreover, a *suspicion* of a muscle spasm or *possibility* of the straightening of the lordotic curve does not equate to an objective finding since "medical opinions addressing compensability and permanent impairment must be stated within a reasonable degree of medical certainty." Ark. Code Ann. § 11-9-102(16)(B).

The remainder of the evidence regarding Taylor's alleged lower back injury all consist of complaints of pain and medical notations regarding pain. Complaints of pain, however,

---

[3]We presume that "surgical" is an error in the transcription of Dr. Pearce's dictation and should have read "cervical."

are not objective medical findings that can support a compensable-injury finding. *Hice v. Logan Cnty.*, 2024 Ark. App. 535, 700 S.W.3d 215; *Carter, supra*.

Because Taylor failed to present proof of objective medical findings to support her claim of a lower back injury, the Commission did not err in concluding that she failed to demonstrate she sustained a compensable injury to her lower back.

B.  TTD Benefits

In her second point on appeal, Taylor challenges the Commission's conclusion that she failed to prove her entitlement to additional TTD benefits for her shoulder injury beyond the TTD that Hino paid from November 6, 2020, through May 12, 2022. TTD benefits are appropriate during the healing period in which an employee suffers a total incapacity to earn wages. *Wall Farms, LLC v. Hulsey*, 2017 Ark. App. 624, 534 S.W.3d 771. The healing period is that period for healing of an accidental injury that continues until the employee is as far restored as the permanent character of his injury will permit and that ends when the underlying condition causing the disability has become stable and nothing in the way of new treatment will improve that condition. *Fuller v. Pope Cnty. Judge*, 2018 Ark. App. 1, 538 S.W.3d 851. The persistence of pain is not sufficient in itself to extend the healing period. *Smallwood v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 466, 375 S.W.3d 747. The claimant has the burden to show that he or she remains in the healing period by a preponderance of the evidence. *Perez v. S. Tire Mart, LLC*, 2024 Ark. App. 623, at 9, 704 S.W.3d 166, 172. When the healing period has ended is a factual determination that the Commission must make, and it will be affirmed on appeal if supported by substantial evidence. *Id.*

In finding that Taylor was not entitled to additional TTD benefits, the Commission cited the results of the April 2022 FCE and Dr. Pearce's ensuing conclusion that Taylor had reached MMI and could return to regular work duties without restriction. The Commission found that Dr. Pearce's "opinion is credible, is corroborated by the record, and is entitled to significant evidentiary weight." The Commission also noted that there were no credible medical opinions of record contradicting Dr. Pearce's opinion. Accordingly, the Commission concluded that "Taylor reached the end of her healing period for her October 21, 2020 compensable right shoulder injury no later than April 18, 2022," the date on which Dr. Pearce opined that she had reached MMI and could return to unrestricted work.

On appeal, Taylor argues that the Commission erred because it credited Dr. Pearce's opinion on this issue but disregarded his opinion that there was no additional treatment necessary for her shoulder injury. She cites other medical records showing the existence of the SLAP tear and notes that no other doctor has released her to return to work. She further argues that she testified at the hearing before the ALJ that she tried to return to work as a home-healthcare aide for a few weeks after Dr. Pearce released her, but she was physically unable to do it.

As Hino notes, however, Taylor also testified that she was not aware that she had been released to full duty, and had she been aware, she would have returned to a full-duty job. In addition, Hino points out that after Dr. Pearce declared she was at MMI and released her to work with no restrictions, there are no other medical records taking her off work or placing restrictions on her.

To the extent that Taylor argues that the Commission was inconsistent in relying on Dr. Pearce's opinion for one purpose and rejecting his opinion for another, her argument cannot prevail. The Commission is the ultimate arbiter of weight and credibility; it has the authority to accept or reject medical opinions, and its resolution of conflicting medical evidence has the force and effect of a jury verdict. *Palmer v. Midwest Fertilizer, Inc.*, 2017 Ark. App. 236, 519 S.W.3d 732; *Bridgestone/Firestone, Inc. v. Hensley*, 2010 Ark. App. 375. Further, the Commission is entitled to review the basis for a doctor's opinion in deciding the weight and credibility of the opinion and medical evidence. *Palmer*, *supra*. Here, the Commission deemed Dr. Pearce's conclusion regarding Taylor's reaching MMI to be "credible, . . . corroborated by the record, and . . . entitled to significant evidentiary weight." We are not at liberty to disturb that decision.

### C.  Attorney's Fees

Taylor's third point on appeal involves the Commission's decision that she had not proved her entitlement to attorney's fees "on all controverted indemnity, including that previously paid for her shoulder." This issue stems from Hino's attempt to amend or withdraw its prehearing stipulation. As noted above, Hino initially accepted Taylor's right-shoulder claim as compensable and paid TTD benefits from November 6, 2020, through May 12, 2022. In a July 24, 2023 prehearing order, the ALJ noted that the parties had stipulated that Hino "initially accepted [Taylor's] alleged right shoulder injury as compensable and paid medical and [TTD] benefits pursuant thereto; but they have now

15

controverted this claim in its entirety." The parties subsequently agreed that among the issues to be litigated was whether Taylor was entitled to a controverted attorney's fee.

At the October 27, 2023 hearing on these issues, Taylor and Hino both addressed the stipulation regarding Hino's controversion of Taylor's shoulder claim. Hino asked if it could rephrase the stipulation, saying that the part about initially accepting Taylor's right-shoulder injury was correct, but proposing that it should state "respondents accepted claimant's right-shoulder injury as compensable and paid temporary and total disability benefits up to . . . and including MMI" and should not state that "[Hino] has now controverted this claim in its entirety." Taylor clarified that Hino wanted to amend the stipulation "to read they . . . have only controverted the back [injury] from the onset of the claim." The ALJ suggested that, if the parties agreed, the stipulation could be struck. Taylor objected to the withdrawal of the stipulation, noting that "the fact that they have controverted the claim in its entirety even though they've paid benefits" went to the issue of attorney's fees. Hino asserted that the stipulation in the prehearing order was essentially a mistake and that it would not be prejudicial to Taylor to change it, except to the extent it might prejudice her attorney and his fees. Hino pointed out that it had not, in fact, controverted the claim in its entirety and thus should not owe attorney's fees on previously paid indemnity. After considering posthearing briefs, the ALJ denied Hino's request to withdraw its stipulation regarding controversion of Taylor's claim and ruled that Taylor was entitled to a controverted attorney's fee on the indemnity benefits previously paid on the claim.

16

The Commission reversed the ALJ's decision on this issue. It acknowledged the July 24, 2023 prehearing order reflecting the parties' stipulation that Hino was controverting the right shoulder claim in its entirety. It also noted Hino's statements before the commencement of the October hearing that it had, in fact, not controverted the claim in its entirety. The Commission reasoned that since Hino initially provided medical treatment and paid TTD benefits for Taylor's shoulder injury, it should be allowed to withdraw its stipulation that it controverted the claim in its entirety. It further determined that because Taylor had not been required to litigate the issue of TTD in order to be paid benefits, she was not entitled to fees for legal services pursuant to Arkansas Code Annotated section 11-9-715(a)(2)(B)(ii) (Repl. 2012). Taylor challenges this decision on appeal.

A stipulation is an agreement between attorneys respecting the conduct of the legal proceedings. *Dinwiddie v. Syler*, 230 Ark. 405, 323 S.W.2d 548 (1959). The Commission has the discretion to allow a party to withdraw a stipulation. *Jackson v. Circle T Express*, 49 Ark. App. 94, 896 S.W.2d 602 (1995). In *Jackson*, the employer accepted compensability and paid benefits, and it stipulated to compensability for purposes of a hearing to determine wage-loss benefits and related medical expenses. The stipulation also was memorialized in a prehearing order, as in the present case. Nevertheless, the Commission allowed the employer to withdraw the stipulation as to compensability in defense of the claim for additional benefits. The Commission reasoned that enforcing the stipulation was not compatible with the basic notions of justice and fair play. This court affirmed the Commission's action, holding that its decision was consistent with its statutory duty under Ark. Code Ann. § 11-9-705(a)(1)

17

(Supp. 2023) to conduct the hearing in a manner that would best ascertain the rights of the parties. The court also concluded that the appellant had suffered no prejudice as a result of the Commission's decision to allow the employer to retract the stipulation.

Here, the Commission concluded that Hino's stipulation that it controverted the claim in its entirety was inconsistent with the fact that it initially accepted Taylor's claim, provided benefits, and paid TTD. In other words, it credited Hino's argument before the ALJ that the stipulation was entered in error and determined, as in *Jackson*, that enforcing the stipulation was not compatible with basic notions of justice.

One of the purposes of the statute and case law is to put the economic burden of litigation on the party that makes litigation necessary by controverting the claim. *Harvest Foods v. Washam*, 52 Ark. App. 72, 80, 914 S.W.2d 776, 780–81 (1996); *Prier Brass v. Weller*, 23 Ark. App. 193, 745 S.W.2d 647 (1988). A maxim of workers'-compensation law is that when the Commission finds that a case has been controverted, in whole or in part, the Commission shall direct the payment of legal fees by the employer or carrier *in addition to the compensation awarded*. Ark. Code Ann. § 11-9-715(a)(2)(b)(i); *Tyson Foods, Inc. v. Fatherree*, 16 Ark. App. 41, 696 S.W.2d 782 (1985). Here, the Commission found that Hino accepted Taylor's shoulder injury as compensable and paid medical bills and TTD through the end of her healing period; thus, there was no need to litigate that matter. Instead, the litigation revolved around Taylor's claim that she also sustained a compensable lower back injury and was entitled to additional TTD. No compensation was awarded on those claims; thus, no legal fees were warranted on that issue. This is what the Commission found:

18

[A] fee is payable from the employer or carrier only if benefits are controverted *and awarded*. *Eldridge v. Pace Indus., LLC*, 2021 Ark. App. 245, 625 S.W.3d 734, citing *Burton v. Chartis Claims, Inc.*, 2014 Ark. App. 47. . . . In the present matter, litigation was not necessary in order for the claimant to receive temporary total disability benefits voluntarily paid by the respondents beginning November 6, 2020 and continuing through May 12, 2022. In the subsequent pre-hearing order filed July 24, 2023, the claimant did not contend that she was entitled to an award of this period of temporary total disability benefits. Nor did the administrative law judge award this period of temporary total disability benefits or any other period. We find that the claimant's attorney is not entitled to fees for legal services in accordance with Ark. Code Ann. § 11-9-715(a)(2)(B)(ii) (Repl. 2012).

(Emphasis in original.)

Having carefully reviewed the record before us, we cannot say that the Commission abused its discretion in allowing Hino to withdraw its stipulation. *See Jackson*, *supra*. We therefore affirm the Commission's decision.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*Caldwell Law Firm, P.A.*, by: *Andy L. Caldwell*, for appellant.

*Jason M. Ryburn*, for appellees.